Bruce R. RIPPEY and A. Gordon RIPPEY, Plaintiffs,

v.

DENVER UNITED STATES NATIONAL BANK, a national banking association, Helen Bonfils Davis, and the Denver Post, Inc., a Colorado corporation, Defendants.

Civ. A. No. 66-C-359.

United States District Court
D. Colorado.

Oct. 26, 1966.

On Motion to Amend Nov. 9, 1966.

See also D.C., 260 F.Supp. 717.

Dawson, Nagel, Sherman & Howard, and Winner, Berge, Martin & Camfield, Denver, Colo., for plaintiffs.

Davis, Graham & Stubbs, and Akolt, Shepherd & Dick, Denver, Colo., for defendant Denver United States National Bank.

Holland & Hart, Denver, Colo., for defendants, Helen Bonfils Davis and The Denver Post, Inc.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This case is before the Court on defendants' motions to dismiss for lack of jurisdiction over the subject matter or, in the alternative, for failure to join parties under Rule 19 of the Federal Rules of Civil Procedure. Another motion seeks dismissal for failure to allege facts sufficient to constitute a valid claim for relief.

The plaintiffs, Bruce R. Rippey and A. Gordon Rippey are residents and citizens of Maryland and Oklahoma, respectively, and are contingent beneficiaries under two testamentary trusts created under the provisions of the Will and first codicil thereto, of Agnes Reid Tammen. The defendants in the action are the Denver United States National Bank, a national banking institution, successor trustee of the Tammen Trust, Helen Bonfils Davis, a resident and citizen of Colorado, and The Denver Post, Inc., a Colorado corporation.

The complaint consists of five claims, or counts. From the allegations it would appear that the Denver United States National Bank sold 17,704.6487 shares of the capital stock of The Denver Post, Inc. to the defendant Helen Bonfils Davis, at a price which is alleged to have been $3,500,000.00 below its actual value. This stock had been held by the Bank as an asset of the Article IV Tammen Trust. It is alleged that this sale constituted a breach of the Bank's fiduciary duty as a trustee of the Tammen Trust and also that it was invalid under Sections 10(b), 17(a) and 29(b) of the Securities and Exchange Act of 1934, Title 15 U.S.C.A. §§ 78j, 78q(a) and 78cc(b) and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5.

The complaint also seeks relief from an amendment of the Articles of Incorporation of The Denver Post, Inc., dated July 17, 1966, which eliminated cumulative voting of stock.

After the present suit was filed the defendants instituted an action in the Probate Court of the City and County of Denver seeking instruction with respect to the administration and distribution of the trust estate and a construction of the Tammen Will and also a declaration as to the propriety of the sale of The Denver Post stock. In this Probate Court case the plaintiffs there named not only Bruce Rippey and Gordon Rippey, but also their mother, Helen Crabbs Rippey, a resident and citizen of Colorado and a lifetime income beneficiary of the Tammen Trust; Cynthia R. Catron, a resident and citizen of Colorado and the daugther of Helen Crabbs Rippey; the two minor children of Bruce R. Rippey and the two minor children of A. Gordon Rippey, together with the two minor children of Cynthia R. Catron; and the Children's Hospital Association, Inc., a Colorado corporation. In addition to the request for instructions addressed to the Probate Court, there is a claim on the part of the Denver United States National Bank that defendants Bruce R. Rippey, A. Gordon Rippey and Helen Crabbs Rippey, and perhaps some of the other beneficiaries, by filing or participating in the filing of this action, may have become absolutely barred and cut off from any share in the corpus, or income from the Tammen Trust. The allegation is that this results from Article XVII of the Tammen Will. This is a forfeiture clause, the text of which is set forth below.[1]

The plaintiffs Bruce A. Rippey and A. Gordon Rippey subsequently filed

Civil Action No. 66–C–419, 260 F.Supp. 717 petitioning removal of the entire case to this Court pursuant to the provisions of Title 28 U.S.C. § 1441(c). The Denver United States National Bank has moved to remand the case to the Probate Court. This motion will be considered separately.

It is to be noted that the first, second, fourth and fifth of five claims herein invoke the jurisdiction of the Court based upon diversity of citizenship. However, the third claim, together with the fourth and fifth claims, alleged federal question jurisdiction pursuant to Title 28 U.S.C. § 1331. In connection with this third claim it is contended that the Court can entertain jurisdiction over the first, second, fourth and fifth claims on a *pendente* basis.

No effort will be made to describe in detail the numerous and lengthy allegations of the complaint. It is necessary, however, to show their general character in order to dispose of the questions before us.

Claim One asserts that the Bank has violated its fiduciary obligations to the beneficiaries and seeks its removal as trustee together with the appointment of a successor trustee.

Claim Two incorporates the allegations of Claim One and prays that the sale be rescinded and that the defendant Bonfils be required to restore the stock to the Tammen Trust or, in the alternative, that the Court order the stock to be sold at a public sale or by sealed bids; or that the Bank, or defendant Helen Bonfils

1. "In making disposition of my estate hereunder to my respective legatees, devisees and beneficiaries outright or in trust, I have kept in mind their respective needs and my gifts to them in the past, and being especially desirous that there be no controversy or litigation over this my Will, therefore, should any of the legatees, devisees or beneficiaries hereunder object to the probate thereof, or in any wise directly or indirectly contest or aid in contesting the same or any of the provisions thereof, or the disposition of my estate thereunder, including the trust provisions, then and in that event I hereby revoke and annul any legacy, devise, bequest or beneficial distribution herein made to such legatee, devisee or beneficiary, and it is my will and I hereby direct that such legatee, devisee or beneficiary shall be absolutely barred and cut off from any share in my estate, trust estate or trust estates, and such legacy, devise, bequest or beneficial disposition so revoked, annulled and canceled shall pass and be distributed to the other beneficiaries hereunder in accordance with the provisions hereof for the limitation over of such legacy, devise, bequest or beneficial interest in the case of the death of such legatee, devisee or beneficiary."

Davis, be surcharged for the difference between the fair market value of the stock on the date of its sale and the amount realized by public sale, or that there be a judgment entered surcharging the Bank for the difference between the sale price and the actual market value on the date of sale.

As indicated above, the third claim invokes the Securities and Exchange Act of 1934 and Rule 10b–5. The demand here is for a restoration of the stock to the Tammen Trust and for an order directing a public, or sealed-bid sale. Claim Four incorporates all of the allegations of the first and third claims and asserts that the defendants acted in concert to violate the fiduciary duties owed by the Bank to the plaintiffs. The fifth and final claim of the complaint concerns itself with the elimination of cumulative voting by the shareholders of The Denver Post. It is prayed that this action be voided seemingly as a fraud on the plaintiffs.

The motions to dismiss raise these points: *first*, that the beneficiaries who have not been joined as plaintiffs are indispensable, or so necessary that the action can not proceed in their absence and that the diversity claims must, therefore, be dismissed; *secondly*, it is argued that claim Three, the 10b–5 claim, is insufficient in law and thus there is not federal question jurisdiction. A corollary to this is that even if there is a valid federal question, the common law claims are not *pendente* to it. A further corollary matter involves the sufficiency of the contention of the plaintiffs that the diversity claims can be justified upon the basis that the plaintiffs are representatives of a class and can thus maintain the action pursuant to Rule 23 of the Rules of Civil Procedure.

## I.

The primary issues is whether the action must be dismissed because of nonjoinder of parties essential to a determination of the controversy. In this connection, four of the eight nonjoined beneficiaries of the Tammen Trust are residents of Colorado. Concededly, if these beneficiaries must be joined they would have to be aligned as plaintiffs and jurisdiction based upon diversity would be defeated. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435; Knoll v. Knoll, 10 Cir., 1965, 350 F.2d 407.

The early definitive case on this subject is, of course, Shields v. Barrow, 17 Howard 130, 15 L.Ed. 158 (1854). There the Supreme Court laid down the categories determinative of this type of question. The Court distinguished between "indispensable", "necessary" and "proper" parties and held that where the parties are indispensable and their joinder would defeat jurisdiction, or where they cannot be joined for other reasons, the action can not proceed in their absence. This categorical approach to the question had been employed prior to the decision in Shields v. Barrow, but following this decision it became narrower and more restrictive and in its restricted form received wide acceptance. It was a part of the federal equity rules and was incorporated into the old Rule 19 of the Federal Rules of Civil Procedure. A wide variety of decisions resulted as to when one label or another should appropriately be applied. See Wright, Federal Courts, 260 (1963). A set formula has never evolved for determining when a particular party is indispensable. However, under the line of decisions that have followed Shields v. Barrow, persons whose rights were joint as distinguished from several, were held to be indispensable. It is pointed out in the Advisory Committee's note to Revised Rule 19 that " * * * persons holding an interest technically 'joint' are not always so related to an action that it would be unwise to proceed without joining all of them, whereas persons holding an interest not technically 'joint' may have this relation to an action." See Reed, Compulsory Joinder of Parties in Civil Actions, 55 Mich.Law Review 327, 356 ff., 483 (1957). The Advisory Committee also points out that the old Rule 19 created a misconception that the ab-

sence of "indispensable" parties actually resulted in the loss of jurisdiction over the persons and the subject matter before it. Citing Reed, supra, 55 Mich.Law Review, at 332–34. A further complicating factor under the old rule was its close relationship to the substantive right which required, according to many courts, careful appraisal of the nature and character of the right under appropriate state law. Revised Rule 19 is a valiant effort to eliminate the confusion which has long surrounded the old Rule 19 by eliminating the categories and the ritual inherited from Shields v. Barrow.

Subsection (a) of the new rule provides that a person who is subject to service of process and whose presence will not deprive the court of jurisdiction, must be joined if complete relief among those already parties cannot be accorded in his absence; or, if he claims an interest and is so situated that disposition of the action in his absence may, as a practical matter, either impair or impede his ability to protect the interest, or subject the parties or the court to a substantial risk of double liability or otherwise inconsistent obligations. The court must order such a person to be made a party.

If, on the other hand, he cannot be joined as provided above, the court must then determine whether to proceed without the party or to dismiss the case. This is part (b) of the new rule. The determination is to be made on the basis whether in *equity* and *good conscience* the action should proceed among the parties before the court or should be dismissed. If the latter conclusion is reached, the person is then and only then to be regarded as an indispensable party.

The rule offers four factors to be considered: 1. The extent that a judgment rendered might be prejudicial to the absent person or to those present in the suit. 2. The extent to which prejudice can be lessened or avoided by protective measures. 3. Whether a judgment rendered in the person's absence will be adequate, and 4. Whether the plaintiff can obtain an adequate remedy in some other court if the action is dismissed. See Joiner, The New Civil Rules, a Substantial Improvement. 40 F.R.D. 359, 364, 365 (1966). It is thus apparent that the new rule shifts emphasis from the use of "indispensable" and "joint interest" to equitable pragmatic considerations which should be controlling. It seeks to eliminate what might be described as "push button" determinations and seeks to require the judge to grapple with the elements of the case which weigh in favor of retention or dismissal. Therefore, its general philosophy calls for an effort to retain jurisdiction of the case where the interests of substantial justice require it even though under the old definitions the absent parties might hold a joint interest with the parties before the court and would be thus regarded as indispensable under the old practice.

It is to be noted that many of the cases approached the present problem in much the same manner that the revised rule now uses. These decisions examined the problem from the standpoint of necessity and pragmatics fully realizing that the question is not one of whether the court had jurisdiction to proceed with the subject matter and the parties which were before it. This is certainly true of the Court of Appeals for the Tenth Circuit. In the Court's latest decision in Britton v. Green, 10 Cir. 1963, 325 F.2d 377, the plaintiffs, Michigan citizens, brought suit against defendants, Oklahoma citizens, in Oklahoma. One of the claims asserted by one of the plaintiffs was the execution of a promissory note by one Ballou in behalf of himself and as agent for the Brittons. This note was secured by a mortgage covering an undivided one-quarter interest in two Oklahoma oil leases. The allegation was that there had been a default in the payment of the note and a failure on the part of the mortgagors to operate the lease properly. The prayer sought foreclosure and the appointment of a receiver to operate the leases. The question was whether certain absent Michigan residents were indispensable parties to the foreclosure

proceeding or to the ancillary appointment of a receiver. The absent parties were co-tenants with the Brittons in the holding of undivided interests in the oil leases and had agreed to allow the Brittons to operate or manage the leases. The Court of Appeals noted that the absent parties had a litigable interest in the operation of the leases pursuant to the operation and management contracts and that a receiver would constitute an interference with their right to be heard. Nevertheless, the court did not dismiss the action. The conclusion was that the plaintiffs before the court were seeking to protect the interests of the co-tenants against an unfaithful trustee and that this factor outweighed the interests of the defendant to urge the absence of co-tenants as ground for dismissal. The Court, through Chief Judge Murrah, gave the following pertinent observations:

"When we come to weighing the relative rights of the parties, i. e., the right of the mortgagee to his Receiver and the right of the absent co-tenants to the benefit of their operating contract, it is not inappropriate to consider that the mortgagee seeks to protect the co-tenancy against an unfaithful operating trustee. He seeks to conserve the property for the benefit of all, and the unfaithful trustee should not be allowed to plead the indispensability of absent parties in avoidance of the proceedings to bring her to account.

*"Viewed in this light, our situation is comparable to the capacity of less than all the beneficiaries of a trust to have a trustee removed, if he has so conducted himself that he ought to be removed,* for '* * * [n]o beneficiary has a right to have the affairs of a trust conducted unlawfully, and no beneficiary can complain of the removal of a trustee if it is demonstrated that he has, because of misconduct, become an unfit person to occupy that position.' Wesson v. Crain, 8 Cir., 165 F.2d 6, 9. The trial Court has found from the evidence that the trustee has

breached her contract and her fiducial obligations, and that the property is in danger of dissipation. If the pendente lite Receivership is a detrimental interference with the contract rights of the absent parties, there is ample opportunity for intervention to assert those rights, or even a claim for tortious interference." 325 F.2d at 384 [Emphasis supplied].

Our own Court, through Judge Chilson, has taken the same kind of enlightened approach in Blizzard v. Penley, D.Colo. 1960, 186 F.Supp. 746. There one heir of a decedent who died intestate sued a second heir seeking to void a deed on the ground of fraud. Plaintiff sought a decree vesting the property in herself, the defendant and the administratrix of the estate. The administratrix was not a party and could not have been joined without destroying diversity. Judge Chilson noted that there existed many reasons why the court should exercise its discretion not to proceed with the action including the fact that the state court could entertain the action and could do it complete justice. The case was retained, however, in the absence of the administratrix, upon the basis that an action in the state court "may be barred by the statute of limitations of the State of Colorado." 186 F.Supp. 751, 752.

Defendants argue that the Tenth Circuit has adopted a view that where interests are joint all parties holding such interest must be joined. They cite Henderson v. United States Radiator Corp., 10 Cir. 1935, 78 F.2d 674, cert. denied 296 U.S. 635, 56 S.Ct. 157, 80 L. Ed. 452. Defendants say that on the other hand, where there is a severable or independent interest such as tenancy in common, the interest is not joint and joinder is not necessary. Citing Holt v. King, 10 Cir. 1957, 250 F.2d 671, and Britton v. Green, 10 Cir. 1963, 325 F.2d 377. It is true that the interests of the parties in *Henderson* were characterized as joint by the court in holding that joint tenants must join in an action for damages to their joint property. It is also true that the interests were tenants in

common in the other cited cases and also in Blizzard v. Penley. These decisions were in accordance with the old version of Rule 19 which stated that "persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants." However, this term has proven so unsatisfactory in practice and has so interfered with the exercise of reason and logic in deciding this type of controversy that it has been eliminated entirely from the revised rule, as has been the term "indispensable."

We note also that the tendency of the pre-*Britton* Tenth Circuit cases has been to examine the nature of the right as joint or several under applicable state law. See, for example, Dunham v. Robertson, 10 Cir. 1952, 198 F.2d 316, 319; Purcel v. Wells, 10 Cir. 1956, 236 F.2d 469; Holt v. King, 10 Cir. 1957, 250 F.2d 671. It is difficult to see how this approach can be reconciled with the equitable and pragmatic analysis set forth in *Britton* and called for by revised Rule 19. How is it possible to have the case turn on whether the substantive interest is joint and at the same time decide it in accordance with a weighing of the factors that are set forth in the rule? Undoubtedly, the nature and character of the right under state law is a factor to be noticed and given some weight in connection with those standards prescribed in revised Rule 19.

Regardless, however, of the part that state law plays in the present evaluation, the result would not be different in the case at bar for the reason that we have been unable to find any Colorado case which holds that the rights which are here asserted require the presence of each member of the group involved. See Game and Fish Commission v. Feast, Colo., 402 P.2d 169 (1965), holding that the joinder of various school districts is not required in an action by purchasers of game and fish licenses to enjoin the Game and Fish Commission's honoring vouchers drawn on their cash fund for the purpose of paying the school fee, the Court noting that the school districts could not lose anything but stood only to

gain from the granting of the relief. See also Woodco v. Lindahl, 152 Colo. 49, 380 P.2d 234; In Conroy v. Cover, 80 Colo. 434, 252 P. 883 (1926), an action was brought seeking an accounting. Plaintiffs were two of the six beneficiaries of a trust. The defendant was the trustee. Three of the beneficiaries refused to join as plaintiffs. The court ordered the joinder of one of these who lived in Colorado, but concluded that the case could proceed without the other two who resided outside Colorado and upon whom service of process could not be made. In holding that the addition of the other beneficiaries was not essential, the court said:

"* * * This would be indeed 'twisting the strands of precedent into a rope with which to strangle justice.' Any trustee could conspire with one *cestui que* trust, take the whole estate, and the others could only appeal to a paralyzed court. It is a simple matter to take an accounting and give the present parties their proper shares, letting the absent ones sue later if they so desire. This is open only to the objection that defendant would be subjected to two suits which is but a rule of convenience and should not be permitted to make a court powerless."

While the *Conroy* case does recognize that all the beneficiaries should be brought in if they are subject to the court's process, it is also clear from a careful reading of the opinion that the court did not regard the absent beneficiaries as indispensable. Indeed, the court indicated that it would, if necessary, proceed without the recalcitrant Colorado beneficiary. The only Colorado case which raises the question as to whether all beneficiaries are essential is the early case of Denison v. Jerome, 43 Colo. 456, 96 P. 166 (1908), wherein it was held that all of the beneficiaries were entitled to participate in a hearing having to do with the appointment of a successor trustee. This is distinguishable, however, from the case at bar in that the beneficiaries had created the trust and selected the trustee in the first place.

Here the Bank was successor trustee under the Tammen Will. Thus, if the beneficiaries were not to be given a participation in removal proceedings here, they would not be deprived of any right which they originally had. Therefore, under decisions of both the Tenth Circuit and of the Colorado Supreme Court there is no impediment to the practical evaluation which is prescribed in revised Rule 19.

The first inquiry is to what extent a judgment rendered in the absence of the beneficiaries who are not named might be prejudicial to them or to those who are already parties. It is important to note that the interests of the beneficiaries are the same; in other words, the absent beneficiaries stand to gain if the named plaintiffs succeed. The result of the granting of relief would be to increase the corpus of the trust for the benefit of all of the beneficiaries. Consequently, the only thing that the absent beneficiaries are deprived of is an opportunity to lend support to the action. In Britton v. Green, supra, the Court of Appeals held that a judgment removing an unfaithful trustee could not prejudice the rights of absent beneficiaries. Similarly here part of the effort involves removal of an allegedly unfaithful trustee. The other relief sought here is also in furtherance of the interests of the absent beneficiaries. They are not applying for participation but rather are content at the moment to allow the brothers Rippey to carry their colors. It is recognized that if the plaintiffs do *not* succeed, the judgment rendered, while it will not be binding upon the absent beneficiaries, may become a precedent which will be difficult for them to overcome. Conceivably, they could commence suit in the state court and obtain a different adjudication, but this, of course, would prejudice the defendants who would have prevailed in this suit and yet be faced with a different result in the state court. Nevertheless, for reasons we will mention, we do not believe these somewhat remote possibilities of prejudice outweigh the need for proceeding without the presence of the absent parties.

Since we perceive no significant prejudice to the parties there is little need to inquire as to whether protective provisions need be taken as required by the second factor set forth in Rule 19(b). In this connection though, the demands for relief are many and various. A court of equity would have latitude in shaping the relief with the absent plaintiffs and the rights of defendants in relationship to them in mind.

The third factor dealing with whether a judgment rendered in a person's absence will be adequate concerns the extent of relief that can be accorded the parties joined and merges with the consideration of how relief may be shaped to protect the parties.

The fourth inquiry is whether the plaintiffs will have an adequate remedy if the action were to be dismissed for nonjoinder. The plaintiffs could file a plenary suit in state court and could there assert all the claims except the third. One difficulty in this connection is that the state court, under the ruling of the Supreme Court of Colorado in *Conroy,* could and most probably would order the resident beneficiaries to participate as parties. Thus, they would be compelled to come face to face with the forfeiture clause in the will. Although this clause does not appear to apply in the present context in that it appears on its face to have been designed to prevent a contest at the time that the will was offered for probate and does not by its terms apply to an action to question the stewardship of the trustee, it nevertheless poses a hazard which is not easy for a beneficiary to face. It is quite understandable that a person who has a very large vested or contingent interest in the income and corpus of a trust would hesitate and pause before subjecting himself to the hazard of such a clause even though a lawyer might evaluate it as a remote risk. Thus, to relegate the absent beneficiaries to state court action requires them to submit themselves to the forfeiture clause and therefore this looms as a highly important considera-

tion in determining whether the state court remedy is an adequate one.

Undoubtedly, the forfeiture clause was carefully considered in relationship to the decision of the beneficiaries to proceed in federal court; not because the federal court might be apt to evaluate the forfeiture clause in relationship to the beneficiaries any more judiciously than the state courts would, but rather to minimize the risk as far as the forfeiture clause in terms of the number of participants.

There is an additional factor that is entitled to some consideration and that is that plaintiffs who select the federal court in a diversity suit are exercising an important constitutional right which should not be lightly dismissed. Payne v. Hook, 74 U.S. (7 Wall.) 425, 429, 19 L.Ed. 260. Indeed, it is sometimes said that the federal court should strain to retain its jurisdiction; at least, it should responsibly retain a cause if it can do so without doing serious injustice to either the absent parties or the parties in the case. Stevens v. Loomis, 1 Cir. 1964, 334 F.2d 775, 778.

In view of the fact that the relief sought is for the benefit of all the beneficiaries and in view of the further fact that a judgment unfavorable to the absent beneficiaries would not be binding on them, the only possible obstruction to retention of the case is the possible prejudice to the defendants from a multiplicity of suits. The defendant Bank would not be substantially prejudiced because it can be reimbursed for the cost of defending attacks against the trust. 2 Scott, Trusts, section 188.4 at 1404, 2nd ed., 1956. Furthermore, if a beneficiary institutes a groundless suit the litigation expense may be charged against his share rather than against the trust fund. In Re Campbell's Estate, 1963, 46 Haw. 475, 382 P.2d 920. Nor will the absent beneficiaries be prejudiced by a multiplicity of suits if the allegation is true that there is an agreement of indemnity between the Bank and Helen Bonfils Davis under which the latter undertakes to hold the Bank harm-

less from any and all expense, including expenses of litigation. The trust corpus is not likely to be depleted by multiple suits.

■ Over all then, the balance of the equities favor the retention rather than the rejection of this suit, and our conclusion is that we are constrained to retain it. Therefore, the motion to dismiss for failure to join essential parties as applied to the second, fourth and fifth claims, should be, and the same is hereby, denied.

## II.

Plaintiffs also seek to maintain a suit notwithstanding the absence of certain beneficiaries upon the basis of revised Rule 23 and newly-added Rules 23.1 and 23.2 to the Federal Rules of Civil Procedure and the related doctrine of "virtual representation." Under Rule 23 the plaintiffs allege that they are adequately and fairly representing a class consisting of the beneficiaries of the Tammen Trust. Under 23.1 and 23.2 their position is that the Tammen Trust is an unincorporated association which they fairly and adequately represent.

■ In our view the beneficiaries of the Tammen Trust are not sufficiently numerous to constitute a class under Rule 23(a). This also determines their claim under Rules 23.1 and 23.2. Rule 23(a) allows one or more members of a class to sue as representative parties on behalf of all members only if the class is so numerous that joinder of all members is impracticable. The numerosity requirement is designed to prevent members of a small class from being unnecessarily deprived of their rights without a day in court. See 3 Moore, Federal Practice, ¶ 23.05, 2nd ed. 1964. This requirement is important because under the revised rule all members of the class are bound by the judgment. The entire purpose of the class action would be frustrated if this were not true. The binding nature of a class action judgment is particularly clear in the Tenth Circuit, which has held under old Rule 23, that a judgment is binding upon the members

of even a "spurious" class. Union Carbide and Carbon Corp. v. Nisley, 10 Cir. 1962, 300 F.2d 561, 587–590.

Additional requirements for maintaining a class action are set forth in subsection (b) to revised Rule 23. In view of our holding that the number of beneficiaries of the Tammen Trust does not render their joinder impracticable under Rule 23(a), it is unnecessary to consider these additional requirements. Nor does the doctrine of *virtual* representation furnish any better ground for proceeding in a representative capacity because here again the group must be large enough to make actual joinder impracticable. Where this requirement is not met the doctrine does not apply. See Campbell v. Webb, 1953, 363 Mo. 1192, 258 S.W.2d 595; Cf. Matthies v. Seymour Manufacturing Co., 2 Cir. 1959, 270 F.2d 365.

The small number of beneficiaries precludes holding that they constitute a class. Therefore, the effort to invoke federal jurisdiction on this ground must be rejected.

### III.

The plaintiffs' third, fourth and fifth claims allege, as previously noted, violations of the Securities and Exchange Act of 1934, Title 15 U.S.C.A. §§ 78j, 78q(a), 78cc(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5 issued pursuant to the Act. Section 78q(a), supra, commonly referred to as Section 29(b) of the Act, creates no substantive liability. It provides a remedy for violation of other provisions of the Act. In and of itself it describes no remedy and so this alleged violation must stand or fall on a showing of the violation of some specific provision of the Act.

Section 17(a) authorizes the Securities and Exchange Commission to prescribe records of securities transactions and to require the maintenance and preservation of records by securities and exchanges and their members and by brokers and dealers. Plaintiffs do not allege that any of the defendants fall within the classes of persons to whom the record-keeping and preservation requirement applies. Hence, this claim is insufficient in law and must be dismissed.

The main federal question claim of the plaintiffs is in the third claim. It invokes Section 10(b) and Rule 10b–5, which require: *first,* the use of mails, or instruments of commerce; *secondly,* purchase or sale of a security; and *thirdly,* the use of a manipulative or deceptive device. Plaintiffs' position is that as beneficiaries they can maintain this action directly as a defrauded seller within the meaning of Rule 10b–5 or that they can maintain it derivatively on behalf of the trust as a legal entity.

The first inquiry is whether the Act and the rule allow the action to be brought by beneficiaries for the benefit of the corpus of the trust and the other members thereof. Plaintiffs cite no authorities in support of this proposition but invoke analogies such as that which obtains where a corporation refuses to assert a claim and the shareholder may then proceed derivatively. They point also to the common law principle which permits the beneficiary to maintain the action where the trustee properly refuses to bring such action. See 2 Restatement of Trusts, second edition, section 282. They further argue that the test for determining who is the defrauded seller (Rule 10b–5), should be the person who suffers from the fraud; that the trustee's interest is not substantial whereby he can be regarded as the true victim.

This analysis has a measure of logic. The only difficulty is that the rule itself and the statute limit the coverage of the act to sellers and buyers. The securities legislation enacted by Congress in 1933 and 1934 developed as a result of the necessity for protecting purchasers and sellers of securities from injury growing out of abuses in the securities business. It sought to give the public information and to provide remedies where deceitful conduct had been used to induce purchase or sale of securities. See Securities and Exchange Commission v. Ralston Purina Co., 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494. The legislation

was not enacted with the kind of sale here in question in mind. The rule itself provides as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

The term "person" as described in Section 3, is: "an individual, a corporation, a partnership, an association, a joint-stock company, a business trust, or an unincorporated organization." 15 U.S.C. § 78c(a) (9).

It is clear that in order to maintain a derivative action under 10b–5 the Tammen Trust must be held to be a "person" within the contemplation of Section 3. Plaintiffs have not cited a case, nor does it appear that any case has ever held that a trust such as the Tammen Trust is to be regraded as a person within the meaning of the Exchange Act, Section 3.

It is noteworthy that Section 2 of the Securities Act of 1933, 15 U.S.C. § 77b (2), in defining "person", does use the term "trust". This definition reads as follows:

"(2) The term 'person' means an individual, a corporation, a partnership, an association, a joint-stock company, a trust, any unincorporated organization, or a government or political subdivision thereof. As used in this paragraph the term 'trust' shall include only a trust where the interest or interests of the beneficiary or beneficiaries are evidenced by a security."

On its face this definition excludes an ordinary trust by requiring that the interest be evidenced by a security. It excludes the ordinary noncommercial trust but includes the business association which is commonly known as a business, or Massachusetts trust. 1 Loss, Securities Regulations 503, second edition, 1961.

Nor is the Tammen Trust to be regarded as an "association" or an "unincorporated association" within the definition contained in Section 3 of the Exchange Act. It is not logical to conclude that the Congress would expressly exclude an ordinary trust from the operation of the 1933 Act, specify only the business type trust in the 1934 Act, and at the same time intend that the ordinary trust should be included by implication under other provisions of the 1934 Act. The difference between an association or business trust and an ordinary trust is so well established that it hardly needs to be documented, but the Supreme Court has, in a different context, in Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 295, 80 L.Ed. 263, made this distinction:

" 'Association' implies associates. It implies the entering into a joint enterprise, and, as the applicable regulation imports, an enterprise for the transaction of business. This is not the characteristic of an ordinary trust —whether created by will, deed, or declaration—by which particular property is conveyed to a trustee or is to be held by the settlor, on specified trusts, for the benefit of named or described persons. Such beneficiaries do not ordinarily, and as mere cestuis que trust, plan a common effort or enter into a combination for the conduct of a business enterprise. Undoubtedly the terms of an association may make the taking or acquiring of shares or interests sufficient to constitute participation, and may leave the management, or even control of the enterprise, to designated persons. But the nature and purpose of the co-operative undertaking will

differentiate it from an ordinary trust. In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. * * * "

The courts have gone so far as to hold that the pension-type, or insurance association trust, is not a business trust. See Yonce v. Miners Memorial Hospital Association, W.D.Va.1958, 161 F.Supp. 178, 186, and Coverdell v. Mid-South Farm Equipment Association, 6 Cir. 1964, 335 F.2d 9.

A trust such as that before us is properly defined as a relationship involving the settlor, the trust instrument, the trust *res*, the trustee, and the beneficiary. The legal entity is the trustee. Cree v. Lewis, 49 Colo. 186, 112 P. 326. Bogert, Trusts and Trustees, § 1, 2d ed. 1965.

■ It is manifest then that the act has not recognized an ordinary trust as a legal entity whereby a beneficiary can derivatively bring an action on its behalf and it is not possible to superimpose by judicial implication any such right upon this remedy which is itself an implied one.

The remaining question with respect to the sufficiency of the 10b–5 claim is whether the plaintiffs, not being able to sue on behalf of the trust as such, can maintain this action on their own behalf as defrauded sellers of a security. The question here presented is not simply one of satisfying a privity requirement. Indeed, the requirement of strict privity of contract would appear to have been relaxed in this area as well as other fields of the law. See 3 Loss, Securities Regulation, 2d ed., 1961, pp. 1767–1771. Rather, the problem here is whether the plaintiffs can allege facts to show that they were the defrauded parties and that the fraud practiced on them caused the damage. In essence, the complaint herein alleges that the Bank sold the shares of stock in question to the defendant Bonfils at an unconscionably low price. It is noteworthy too that the Trust granted to the Bank almost unlimited power to make the sale and did not require it to consult with the beneficiaries before completing the sale. The complaint is replete with allegations directed to the Bank. It is alleged, for example, that the Bank knew that parties other than Bonfils were interested in the purchase of the stock. It is alleged that one of the beneficiaries requested the Bank to contact these prospective purchasers. It is also alleged that the Bank stated that any sale would be made with deliberation, and in one paragraph it is alleged that the Bank represented to the beneficiaries that it would take at least thirty days for it to complete its analysis of the stock before any sale would be made.

There is no allegation that fraud was practiced on the plaintiffs by the buyer of the stock, or that fraud was practiced on the Bank by the buyer. The allegation of a conspiracy between the Bank and plaintiffs is now conclusory. For example, there is no fact alleged which discloses that the Bank was serving an interest of its own or was under the influence of Bonfils or the Post. All of this is left to conjecture. Therefore, the real thrust of this complaint is a charge of fraud by the Bank practiced on the beneficiaries. Clearly, a 10b–5 suit by the beneficiaries against the Bank is under the law impossible. The 10b–5 remedy contemplates a deceptive device in relationship to the purchaser or seller of stock, deception being practiced by either the buyer or the seller. Plaintiffs recognize the weakness of the complaint in this regard and point to evidence contained in depositions which might serve to repair these deficiencies. The Court, however, must appraise the complaint in its present form and can not go beyond the allegations in connection with this motion to dismiss.

There is an allegation that the defendant Bonfils entered in bad faith into an agreement mutually restricting the sale of Post stock—that she did not intend to

sell in any event. Standing alone this makes little impact as a material deception on the Bank. As to failure to disclose information to plaintiffs, it is to be observed that as an arm's length buyer it is not apparent that Bonfils owed a duty such as the Bank, a fiduciary, to disclose facts to plaintiffs.

We do not now hold that allegations that the Bank was victimized will give rise to a right by plaintiffs. In the last analysis it will depend on the facts alleged and the extent that deception of the plaintiffs may also be shown. Evidence showing *direct* deception and action in reliance thereon by the plaintiffs may also be available and these observations do not rule out such a possibility.

■ We must conclude, in view of the foregoing, that the 10b–5 claim is insufficient in law for failure to contain allegations of fraud or deception running from the buyer to the seller, whether the seller be regarded as the Bank or the beneficiaries. In over-all summary, it is

ORDERED:

1. That the motion of defendants to dismiss for failure to join essential parties should be, and the same is hereby, denied. This order applies to Claims One, Two, Four and Five.

2. The motion to dismiss Claims Four and Five, to the extent that they seek to invoke federal question jurisdiction, should be, and the same are hereby, granted.

3. The motion to dismiss Claim Three for failure to state facts sufficient to constitute a valid claim for relief within the requirements of Rule 10b–5 should be, and the same is hereby, granted.

Plaintiffs are granted twenty days within which to file an amended Claim Three if they wish to do so.

On Motion to Amend

The defendants have moved under Title 28 U.S.C.A. § 1292(b), to amend this Court's Order of October 26, 1966, by adding the following statement to paragraph 1 thereof:

"In the opinion of the Court the order denying defendants' motions to dismiss claims 1, 2, 4 and 5 for failure to join essential parties involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from so much of said order may materially advance the ultimate determination of the litigation."

The grounds set forth in the motion are: *first*, that if the Court had ordered the joinder of local beneficiaries diversity jurisdiction would have been destroyed; *secondly*, it is said that the interlocutory appeal is particularly appropriate because of the recent revision of Rule 19 and the dearth of case law construing it; and *third*, that should this case be reversed the interlocutory appeal would have spared the extraordinary period of time and expense which a trial would entail.

The statute provides that where a District Judge is of the opinion that an interlocutory review involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate determination of the litigation, he shall so certify to the Court of Appeals, which Court may in its discretion permit an appeal to be taken notwithstanding that a final judgment has not been entered.

We have examined the statute and numerous cases under both this section and its predecessor and it would appear that in the case before us the matters to be considered are as follows:

*First*, the likelihood of reversal by the Court of Appeals; *secondly*, the length of time it will take to bring the case to trial; *thirdly*, the additional expense which might be involved by proceeding to trial at the present time.

Generally speaking, it would appear that the legislation was aimed at the big and expensive case involving an unusual amount of time and money at either the pretrial or the trial stage. See Bobolakis v. Compania Panamena Mari-

tima San Gerassimo, S.A., D.C.N.Y. 1958, 168 F.Supp. 236, 239–240. It often has been said to apply to exceptional cases and exceptional circumstances. See Milbert v. Bison Laboratories, 3 Cir. 1958, 260 F.2d 431; 1 Barron & Holzoff, Federal Practice and Procedure § 58.1, page 323. Numerous decisions have held that the statute is not applicable to a question involving the exercise of discretion. E. g., Marco v. Dulles, D.C.N.Y.1959, 177 F.Supp. 533, 553; McSparran v. Bethlehem-Cuba Iron Mines Co., D.Pa.1960, 26 F.R.D. 619, 622; Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co., S.D.N.Y.1961, 198 F.Supp. 284, 286; Seven-Up Co. v. O-So Grape Co., D.C.Ill.1959, 179 F. Supp. 167.

 Revised Rule 19 does not involve consideration of pure questions of law but rather entails the weighing of facts and circumstances and, finally, determination based upon equitable considerations.

The question here is one which would be "controlling" if it were to be resolved in favor of the defendants. Of course, it would be presumptious to predict that the Court of Appeals will not reverse the case. It can only be said that since the determination is a factual one it is not the type of question which is usually reviewed and reversed. It would require a conclusion by the Court of Appeals that there had been a gross abuse of discretion.

The length of time required to bring a case to trial will depend largely on the aggressiveness of counsel. The Court is ready to grant a very early trial and hence it is a matter of the ability of counsel to prepare the case for trial. There would be additional expense if the case were to be reversed and ordered dismissed, and so the third element mentioned above is dependent upon the first point mentioned, that is, the likelihood of a reversal.

Finally, it is never desirable to try a case piecemeal. Justice is better served if the entire controversy and all of its questions can be determined in the District Court prior to the appeal.

A further consideration is that an interlocutory appeal in this case would work a hardship in that it would cause a long delay. It is in the interest of both parties to hear and determine this case with dispatch.

It is concluded that the cause is not one which calls for the issuance of the certificate authorized by 28 U.S.C. § 1292(b). The motion to amend the order is denied.