Louis **KLAMBERG**, Individually and on behalf of all other persons who were beneficiaries of the Sandler of Boston Profit-Sharing Retirement Plan and Trust after April 1, 1969, Plaintiffs,

v.

Chester **ROTH** et al., Defendants.

No. 75 Civ. 1507 (JMC).

United States District Court,
S. D. New York.

Oct. 20, 1976.

Herrick, Feinstein, Mendelson & Abramson, New York City, by Edward M. Abramson, New York City, for plaintiff.

D'Amato Costello & Shea, New York City, by Robert E. Meshel, New York City, for defendants Chester Roth, Albert P. Slaner, Norman A. Jackson, Harold Glasser and Robert H. Zimring.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, by John M. Delehanty,

New York City, for defendant Kayser-Roth Corp.

## MEMORANDUM OPINION

CANNELLA, District Judge:

Motion to dismiss the complaint, for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction, is denied.

Plaintiff, as beneficiary of a trust, has standing to bring an action based on § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5, against the trustees of the trust.

The facts alleged in the complaint are taken as true. *A. T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir. 1967).

Plaintiff Louis Klamberg brings this action on behalf of employees of A. Sandler Co. and beneficiaries of its Profit-Sharing Retirement Plan and Trust ("the Trust" or "the Plan"). Klamberg was an employee of A. Sandler Co. and a participant in the Plan from its inception in 1953 until his retirement in 1974 as an employee of Kayser-Roth Shoes, Inc. (into which A. Sandler Co. had merged in 1973). Shortly after Kayser-Roth acquired all the outstanding stock of A. Sandler Co. in or about April 1969, Kayser-Roth replaced the existing trustees and members of the Committee of the Trust, who were employees of A. Sandler Co., with the individual defendants, who were controlling shareholders and/or members of the board of directors and/or officers of Kayser-Roth. The successor trustees then proceeded to invest more than 70% of the total assets of the Trust ($724,500 out of approximately $1,000,000) in Kayser-Roth stock and to retain the stock despite its drop in market price to approximately $210,000 as of the date of the complaint. The value of plaintiff Klamberg's interest, which he approximates as $100,000 at the date of purchase, had diminished to approximately $55,000 by the date he retired, largely due to the deterioration of the Kayser-Roth stock. Plaintiff claims that, based upon the information available to the individual defendants by virtue of their relation to Kayser-Roth, defendants knew or should have known that Kayser-Roth common stock was not of investment quality. Nonetheless, and despite their obligations of undivided loyalty to the beneficiaries of the Trust, the defendants allegedly failed to disclose to plaintiff and the other beneficiaries, *inter alia*, that they had invested over 70% of the Trust assets in Kayser-Roth stock and held the stock for the benefit of Kayser-Roth rather than in the interest of the beneficiaries of the Trust. Plaintiff, claiming that defendants' conduct constitutes "a device, scheme or artifice to defraud," as that phrase is employed in the federal securities laws, and also gives rise to a claim for common law fraud, seeks compensation for the loss suffered by reason of the Plan's investment in the Kayser-Roth stock.

The thrust of defendants' motion to dismiss the complaint is that plaintiff lacks standing to sue under § 10(b) and Rule 10b–5 because he does not come within the rule enunciated by the Second Circuit in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

In an opinion written by Judge Augustus Hand the court concluded that § 10(b) "was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller." *Id.* at 464. As courts began to interpret the *Birnbaum* rule in the context of myriad plaintiffs and diverse factual patterns, it was found by many courts that *Birnbaum* was not as restrictive as it had seemed. *See, e. g., International Controls Corp. v. Vesco*, 490 F.2d 1334, 1345–46 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974); *Ruckle v. Roto Am. Corp.*, 339 F.2d 24, 28 (2d Cir. 1964); *Hooper v. Mountain States Secs. Corp.*, 282 F.2d 195, 201–02 (5th

Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). Other courts discarded the rule entirely. *See, e. g., Eason v. General Motors Acceptance Corp.*, 490 F.2d 654, 659 (9th Cir. 1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). Whereas the latter approach became impermissible when, in 1975, the Supreme Court held "that *Birnbaum* was rightly decided," *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the cases finding unconventional situations to come within the rule's mandate still contain viable precedent.[1]

The majority of decisions concerning the type of *Birnbaum* case presently before the Court holds that the "beneficiary of a trust has standing . . . to assert a 10b–5 claim against a trustee, at least where the actions challenged are not arms-length transactions by the trustee."[2] *Selzer v. Bank of Bermuda Ltd.*, 385 F.Supp. 415, 419 (S.D.N.Y.1974) (Pollack, J.), *citing Local 734 Bakery Drivers Pension Fund Trust v. Continental Ill. Nat'l Bank & Trust Co.* [1973–1974 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,565 (N.D.Ill.1974); *James v. Gerber Prods. Co.*, 483 F.2d 944 (6th Cir. 1973); *Heyman v. Heyman*, 356 F.Supp. 958 (S.D.N.Y.1973) (Bauman, J.).

In *Heyman v. Heyman, supra*, plaintiff was one of two beneficiaries under a testamentary trust created by her father. The corpus of the trust was to be funded by the sale of certain stock owned by the settlor at his death, such stock to be sold at its "fair value." Plaintiff claimed that the defendants, by undervaluing the stock (par value and book value, instead of fair value) and concealing its true worth, violated § 10(b) and Rule 10b–5. The defendants argued that the complaint failed to state a claim under § 10(b) because, *inter alia*, plaintiff was neither a purchaser nor seller of securities and therefore failed to qualify under the *Birnbaum* rule. Judge Bauman disagreed, despite the fact that plaintiff had acquired only a beneficial interest in the stock and did not even allege that she actually purchased or sold the securities in question. Recognizing that *Birnbaum* was the law, he concluded nonetheless that plaintiff had standing to bring the action:

> Although not the seller, she was one who immediately stood to gain or lose by the sale . . . . In cases such as *Birnbaum* . . ., plaintiffs were not only nonsellers; they were not involved, directly or indirectly, in a sale. The sales, in each case, had been concluded between defendants and third parties. Here, plaintiff's connection with the sale is much closer; although plaintiff was not the nominal seller, she was the beneficiary of the sale. That is a nexus missing in the line of cases which follow *Birnbaum*.

1. The *Blue Chip* Court recognized that "the *Birnbaum* rule has been flexibly interpreted by lower federal courts," *id.* at 751, 95 S.Ct. at 1933, without commenting either pro or con on these decisions.

2. The Second Circuit noted in dictum that the beneficiary of a trust agreement does not have an implied civil cause of action under § 10(b) and Rule 10b–5 against a trustee who, with full knowledge of all material information, sells shares from the trust corpus in an arm's length transaction for what the beneficiary considers to be inadequate consideration. If the trustee made a poor decision after considering the material information, the beneficiary's loss is not of the sort which § 10(b) was meant to prevent and even though a literal interpretation of the language in Rule 10b–5 could cover the trustee's acts, the beneficiary is not entitled to bring a civil action in reliance upon § 10(b)'s criminal liabilities.
*Schoenbaum v. Firstbrook*, 405 F.2d 200, 212 (2d Cir.), *rehearing*, 405 F.2d 215 (2d Cir. 1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). The Second Circuit considered the transactions that occurred in *Schoenbaum* to have been at "arm's length" because they were knowingly entered into by the *plaintiff* and "plaintiff failed to . . . support his allegations of conspiracy among the defendants to contradict the defendants' affidavits which categorically denied the existence of any conspiracy . . . ." *Id.* at 211 (citation omitted). More significant, however, was the court's conclusion that "there was no fraud and [that] the allegations amounted to nothing more than breach of fiduciary duty . . . ." *Id.*

*Heyman v. Heyman, supra,* at 965; *see Bolger v. Laventhol, Krekstein, Horwath and Horwath,* 381 F.Supp. 260, 267 (S.D.N.Y.1974) (Metzner, J.); *Goodall v. Columbia Ventures, Inc.,* 374 F.Supp. 1324, 1329–30 (S.D.N.Y.1974) (MacMahon, J.).

Defendants in this action attempt to distinguish the cases in which trust beneficiaries were granted standing, stating that "[t]hose cases involved beneficiaries of testamentary or *inter vivos* trusts which were designed to benefit one or two individuals [who] were directly involved in the pertinent securities transactions." Defendants' Reply Memorandum, at 8. Yet, the defendants do not explain the significance of the particular kind of trust or the number of beneficiaries to the issue of the beneficiary's standing, and this Court finds that the distinction defendants attempt to draw makes no real difference. Fraud perpetrated by a trustee in the purchase or sale of securities on behalf of the trust has a tangible impact on each beneficiary, no matter how many beneficiaries are thereby affected and regardless of the precise purposes of the trust. The policies behind the *Birnbaum* rule are not undermined when the number of trust beneficiaries is greater than a handful.[3]

Based upon the above analysis, the Court finds that plaintiff Klamberg has standing to bring this 10b–5 action. Since plaintiff states a claim for relief under § 10(b) and Rule 10b–5, the Court will retain pendent jurisdiction over plaintiff's common law claims and finds it unnecessary to decide whether plaintiff also states a claim under § 17(a) of the Securities Act of 1933, *see S. E. C. v. Texas Gulf Sulfur Co.,* 401 F.2d 833, 867 (2d Cir. 1968) (Friendly, J., concurring), *cert. denied,* 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971).

Defendants' motion is therefore denied in all respects.

SO ORDERED.

**3.** One of the points stressed by the Supreme Court in *Blue Chip, supra,* 421 U.S. at 742–43, 95 S.Ct. 1917, was that the *Birnbaum* rule prevents 10b–5 actions from turning largely on plaintiff's oral testimony of his unverifiable recollections because the purchase and sale of stock may be established by independent documentary evidence. In the instant case, plaintiff asserts that he can prove by documentary evidence the purchase of the Kayser-Roth stock and his financial interest in such stock, as well as the extent of his resultant loss.