**Susan Mary NORRIS, Plaintiff,**

v.

**William W. WIRTZ, individually and as trustee, Arthur M. Wirtz, individually and as trustee, St. Louis Arena Corporation, a corporation, Arena Bowl, Inc., a corporation, and Wirtz Corporation, a corporation, Defendants.**

**No. 80 C 6836.**

United States District Court, N.D. Illinois, E.D.

Sept. 13, 1982.

Mayer Brown & Platt, Roger W. Barrett, Alan N. Salpeter, Chicago, Ill., for plaintiff.

Kenneth E. Scranton, Richard L. Manning, Crowley, Fuller & Manning, Lawrence Jay Weiner, Lawrence Jay Weiner & Associates, Chicago, Ill., for defendants.

MEMORANDUM AND ORDER

MORAN, District Judge.

This action is brought pursuant to Section 10(b) of the Securities Exchange Act of

1934, 15 U.S.C. § 78j(b) and Rule 10b–5 of the Securities and Exchange Commission promulgated thereunder. This court has subject matter jurisdiction over plaintiff's claims pursuant to Section 27 of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. § 78aa, and Title 28 of the United States Judicial Code, Section 1331, 28 U.S.C. § 1331. Plaintiff Susan Norris seeks monetary relief against defendants William W. Wirtz, Arthur M. Wirtz, St. Louis Arena Corporation, Arena Bowl, Inc., and Wirtz Corporation. Before the court is defendants' motion to dismiss the complaint. Defendants seek a dismissal of the action on three grounds: first, that plaintiff lacks standing under the 1934 Act to maintain this action; second, that plaintiff's complaint fails to state a cause of action under Section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder; and third, defendants are not proper party defendants.[1] For the following reasons the court finds that Susan Norris has standing to maintain this action but grants defendants' motion to dismiss on the ground that plaintiff has failed to state a cause of action under Section 10(b) and Rule 10b–5. Therefore, the court need not reach the merits of defendants' third argument.

I. *Factual Background*

For purposes of this motion to dismiss the court accepts as true the following allegations of the complaint. James Norris was the father of plaintiff Susan Norris. Prior to his death on February 25, 1966 James Norris and defendant Arthur Wirtz owned a number of closely-held corporations. In most of these corporations defendant Arthur Wirtz and his family owned 51% of the stock and James Norris owned 49%. Defendant Arthur Wirtz served as president of most of these corporations and James Norris served as chairman of the board; after James Norris' death defendant William Wirtz served as president and defendant Arthur Wirtz served as chairman of the board.

Two executors were appointed to administer James Norris' estate: his wife, Mary Norris, and defendant William Wirtz. His will gave certain personal property to his wife and then divided the residuary estate between a trust for Mary Norris and one for plaintiff Susan Norris. The will appointed defendant William Wirtz as trustee and defendant Arthur Wirtz as successor-trustee for both trusts. Since Mary Norris' death on January 3, 1976, William Wirtz has acted as sole executor of the James Norris estate.

On September 21, 1967 a verified petition was filed in the Circuit Court of Cook County, Illinois, County Department, Probate Division (state court) by the co-executors of the James Norris estate, Mary Norris and William Wirtz, seeking leave on behalf of the estate to sell 4,993 shares of $100 par value common stock of St. Louis Arena Corporation, a Norris-Wirtz corporation. The proposed sale was to take the form of a repurchase and redemption of said stock by the corporation. The petition stated that it was in the best interests of the estate and its beneficiaries that the stock be repurchased by the corporation and that the redemption price had been substantiated by the corporation's last available balance sheet dated June 30, 1967. Apart from the balance sheet no other evidence of the stock's value was submitted by William Wirtz to co-executor Mary Norris, Susan Norris, or the state court. The balance sheet listed all investments of the St. Louis Arena Corporation at their cost, not at their fair market value.

On September 21, 1967 the co-executors filed another petition in state court seeking leave on behalf of the estate to sell 1,500 shares of $50 par value common stock of Arena Bowl, Inc., another Norris-Wirtz cor-

---

1. Defendant alleged limitations and substantive defenses as well, together with supporting documents. Because those defenses required factual development, possibly necessitating discovery by plaintiff, the court has confined its consideration to those issues defined by the allegations of the complaint. The court has, however, relied upon the will of James Norris, a document relied upon by plaintiff in her complaint and from which her rights are derived, even though she did not attach it as an exhibit to her complaint.

poration. The proposed sale was to take the form of a repurchase and redemption of the 1,500 shares of stock by the corporation. The petition stated that it was "for the best interests of the estate and the said beneficiaries thereunder" that the stock be repurchased by the corporation and that Arena Bowl, Inc. had offered to redeem the stock "at a price representative of the valuation of the assets of the company as disclosed in the Balance Sheet submitted to the State Court." No other evidence of the stock's value was submitted by William Wirtz to Mary Norris, Susan Norris, or the state court. Susan Norris alleges that the balance sheet listed all Arena Bowl, Inc. investments at their cost, not at their fair market value.

William Wirtz knew, or would have known had he not acted recklessly, that the fair market value of the stock owned by the James Norris estate to be redeemed by the corporations was substantially greater than the price to be paid by them for said stock, that the price paid by the corporations was grossly inadequate, and that she did not know or have reason to know the fair market value of the stock. William Wirtz knowingly concealed the true value of the stock from plaintiff, Mary Norris, and the state court, and that use of the balance sheets of the corporations had the effect of materially understating the stock's value. William Wirtz knowingly concealed these facts so that the state court would approve the stock redemptions. By these acts William Wirtz was engaged in a scheme to defraud, and did defraud Susan Norris, in violation of Section 10(b) of the 1934 Act and Rule 10b–5. His fraudulent actions were also taken on behalf and for the benefit of the defendant corporations.

As a result of William Wirtz' failure to disclose the true value of the corporations' assets and thus the true value of their stock to the state court, and his representations that the sale of said stock was in the best interests of the estate, the state court approved the redemptions of stock by the St. Louis Arena Corporation and Arena Bowl, Inc. If Mary Norris or the state court had been made aware of the true value of the corporations' assets and stock, they would not have approved the sale, and if Susan Norris had known she would have requested the state court to disapprove the sales. Subsequent to the state court's approval the stock of St. Louis Arena Corporation and Arena Bowl, Inc. was redeemed for $2,600,-000 and $86,265 respectively, which were unfair prices.

Arthur Wirtz agreed with William Wirtz that the stock should be redeemed, agreed on the steps that were taken to carry out the redemptions, and substantially assisted William Wirtz and the corporations in carrying out the redemption and scheme to defraud Susan Norris. Arthur Wirtz and William Wirtz controlled the actions of the corporations in connection with the redemptions and are therefore liable under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t.

On September 27, 1968 Mary Norris and William Wirtz filed a third petition in state court seeking leave on behalf of the estate to sell 8,625 shares of stock in Judge & Dolph, Ltd., a wholesale liquor company. The petition stated that the Wirtz Corporation owned more than 75% of the outstanding stock of the corporation and that it was to be "liquidated and dissolved in due course." The petition further stated that the Wirtz Corporation had made offers to all the other shareholders of Judge & Dolph, Ltd. to purchase their stock for $20 a share. Thus, the price to be paid by the Wirtz Corporation for the stock owned by the James Norris estate would be $172,500. William Wirtz told the state court that this price was "a fair and just price" and was in the "best interests" of the James Norris estate. No documentation, affidavits or other factual materials were submitted to the state court to justify this statement.

Despite William Wirtz' representation to her, Mary Norris, and the state court, that Judge & Dolph, Ltd. was "to be liquidated and dissolved in due course," it is still owned and operated by the Wirtz family and is one of the largest wholesale liquor companies in the Chicago metropolitan area. The amount paid for the stock, $172,-

500, was grossly inadequate—the same shares of stock were valued at $282,000 as of the date of James Norris' death in a settlement arrived at with the Internal Revenue Service. William Wirtz knew or would have known had he not acted recklessly, that the price to be paid by the Wirtz Corporation for the stock was grossly inadequate, that there was no factual basis for concluding that the price was "fair and just," and that Judge & Dolph, Ltd. was not going to be "liquidated and dissolved in due course." William Wirtz knowingly concealed these facts so that the state court would approve, as it subsequently did, the sale of said stock to the Wirtz Corporation.

By knowingly undervaluing the true worth of the stock and by concealing this worth from plaintiff, Mary Norris, and the state court, William Wirtz engaged in a scheme to defraud and did defraud Susan Norris, in violation of Section 10(b) of the 1934 Act and Rule 10b–5. His fraudulent actions in connection with the sale of said stock were also taken on behalf and for the benefit of the Wirtz Corporation. As with the previous transactions, Susan Norris alleges that the sale would not have been approved by the state court if the true facts had been made known to it, and that Arthur Wirtz substantially assisted William Wirtz in this scheme to defraud her.

As a result of the above-described transactions Susan Norris seeks damages in the amount equal to the difference between the fair market value of the stock as of the dates such stock was sold to the three corporations and the price received by her trust as a result of said sales, plus the interest thereon from the sale dates until the date of judgment. In addition, she seeks reasonable attorneys' fees and costs.

## II. Motion to Dismiss

### A. Standing

■ In *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), the court held that a plaintiff must be a purchaser or seller of securities to bring a private action for damages under Section 10(b)[2] or Rule 10b–5.[3] The Supreme Court adopted the *Birnbaum* rule in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). It is not disputed that Susan Norris herself did not sell the stock from her father's estate to the three defendant corporations. The three sales were made by the co-executors of the James Norris estate: Mary Norris and William Wirtz. Apart from certain personal property given to Mary Norris, James Norris divided the residuary estate between Mary Norris and Susan Norris through testamentary trusts. Thus, Susan Norris was, as a testamentary trust beneficiary, a principal beneficiary of her father's estate.

In *Heyman v. Heyman,* 356 F.Supp. 958 (S.D.N.Y.1973), plaintiff was the benefi-

2. Section 10(b) of the 1934 Act provides in relevant part:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> \* \* \* \* \* \*
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

15 U.S.C. § 78j.

3. Promulgated pursuant to § 10(b) of the 1934 Act, Rule 106–5 provides:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange:
>
> (a) To employ any device, scheme, or artifice to defraud.
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

17 C.F.R. § 240, 10b–5.

ciary of a residuary trust created by her father's will. Plaintiff's trust was funded with the proceeds from the redemption of stock which her father had owned in the defendant corporation. Plaintiff claimed that the executors of her father's estate had redeemed the stock to the defendant corporation at less than its fair market value. The *Heyman* court held that plaintiff had standing to sue the executors of her father's estate and the defendant corporation. The court reasoned that although the plaintiff was not the seller she was the one who immediately stood to gain or lose and it was for her benefit that the sale was made. The court stated that plaintiff was the beneficiary of the sale and conferring standing on her did not violate the purpose of *Birnbaum*, which was to foreclose suits under Section 10(b) against corporate mismanagement unrelated to securities transactions.[4]

Although *Heyman, supra,* was decided prior to the Supreme Court's adoption of the *Birnbaum* rule, federal courts in decisions subsequent to that adoption have relied on *Heyman* in conferring standing on plaintiffs who are beneficiaries of a sale. For example, in *Hackford v. First Security Bank of Utah,* 521 F.Supp. 541 (D.Utah 1981), the court found that:

> While the trust beneficiaries did not perform the mechanics of the sale of their stock, they were not the bystanders contemplated by *Blue Chip.* They are separate from the public-at-large. It was stock in which they had a beneficial interest which was sold. If any fraud occurred as to them, it was they who would feel the impact, not the trustee "seller".

*Id.* at 549. *See e.g., Kirshner v. United States,* 603 F.2d 234, 240 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *Klamberg v. Roth,* 425 F.Supp. 440, 442 (S.D.N.Y.1976). This conclusion has not been foreclosed in this circuit since the Court of Appeals for the

Seventh Circuit, in *O'Brien v. Continental Illinois National Bank & Trust Company of Chicago,* 593 F.2d 54, 59 (7th Cir.1979), stated that it was "unable to say categorically that plaintiffs, on whose behalf Continental bought, were not in any sense purchasers of the securities."

In the instant case Susan Norris would be the person who would feel the impact if any fraud occurred in the stock sales to the defendant corporations. As beneficiary of a residuary trust funded by assets of the James Norris estate, the sale of such assets for any unreasonably low price would *directly* affect the *plaintiff* (and also her mother) and not the seller, executor-trustee William Wirtz.

Defendants contend that Susan Norris, as the beneficiary of an unfunded trust, is too far removed from the transactions to have standing to maintain this action. They argue that Susan Norris had no rights, interest or connection with respect to said transactions since the sales were effected by the executors of the estate prior to the funding of the residuary trusts and these estate assets could have possibly become property of plaintiff's trust only after settlement of the estate and then only if property remained after payment of debts and was allocated by the trustee to plaintiff's trust (as distinguished from her mother's trust). Alternatively, defendants contend that assuming *arguendo* the transactions were effected by William Wirtz, as trustee, for or on behalf of her trust, Susan Norris would still be without standing to institute this action. This court cannot agree with these contentions.

In *Heyman, supra,* the redemption of stock was effected by the executors of plaintiff's father's estate and plaintiff's trust was then funded with the proceeds from this redemption. Moreover, plaintiff's father's will divided the residuary estate into two equal portions, to be held in sepa-

---

4.  *See also James v. Gerber Products Co.,* 483 F.2d 944, 948 (6th Cir.1973) as beneficiary of a trust from which shares of stock were sold, plaintiff had standing to assert a 10b–5 claim since she was the person who was to be benefitted by the sale and thus she had the interests of a *de facto* seller); *Selzer v. Bank of Bermuda, Ltd.,* 385 F.Supp. 415, 419 (S.D.N.Y.1974) (plaintiff as beneficiary of a trust had standing to assert a 10b–5 claim against a trustee where the challenged actions were not arm's-length transactions).

rate trusts for plaintiff and her brother, defendant Michael Heyman. Despite these facts the *Heyman* court conferred standing on the plaintiff since she was a beneficiary of the sale and the one who would be injured by any failure to receive fair market value for the stock. This court agrees with the reasoning of the *Heyman* court and reaches the same conclusion on similar facts in the present case. On the basis of hindsight now available to him, William Wirtz cannot now argue that he would have decided to allocate the stock or the proceeds from its sale to Mary Norris' rather than plaintiff's trust. Moreover, a failure to receive fair market value for the estate affects the net worth of the estate and, accordingly, affects the value of the estate assets which would fund Susan Norris' trust.

Defendants rely on the following case authority to support their proposition that a sale by a trustee on behalf of a plaintiff's trust does not confer standing on that plaintiff to maintain a 10b–5 action against the trustee. *See e.g., Fitzsimmons v. Old Security Insurance Company,* CCH Fed.Sec. L.Rep. ¶ 96,236 (N.D.Ill.1977); *Lincoln National Bank v. Lampe,* 414 F.Supp. 1270 (N.D.Ill.1976); *Rippey v. Denver United States National Bank,* 260 F.Supp. 704 (D.Colo.1966). These cases rely on *Blue Chip, supra,* in holding that standing to maintain a 10b–5 action is limited to *actual* purchasers or sellers. There is no controlling case authority on this question since neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has yet decided whether beneficiaries of a sale in Susan Norris' position have standing to maintain a 10b–5 action. Therefore, this court "is unwilling to extend, or apply, as the case may be, the holding of *Blue Chip* to deny plaintiff standing in this case." *Hackford, supra* at 549. *See also Kirshner* and *Klamberg, supra.*

### B. Cause of Action

█ Having recognized that Susan Norris has standing, the court must now decide whether she has stated a cause of action under Section 10(b) and Rule 10b–5. Both proscribe fraud "in connection with the purchase or sale" of securities.

In approaching that issue, the court is not unmindful of the recent history of federal securities fraud claims and implied rights of action in the Supreme Court. While this court has determined that plaintiff has standing to litigate here if she has a federal claim, it is also aware that the courts have been increasingly inhospitable to sweeping within the ambit of federal securities law claims only marginally related to purchase-and-sale transactions as commonly understood.

Here the claim relates to the probate court approval in 1966, 1967 and 1968 of the sale of assets of an estate then subject to probate. The approval was sought and obtained by the co-executors, defendant William W. Wirtz and plaintiff's mother, Mary Norris. By the decedent's will the residuary estate, of which those assets were a part, was to be divided between the testamentary trusts. During the administration of the estate, however, the co-executors had the same powers as the succeeding testamentary trustee to sell assets. Plaintiff claims that fiduciary Wirtz misled her, his co-executor and the court in valuing those assets. Such are the stuff of state chancery actions and, indeed, plaintiff contemporaneously with this action filed an action in state court.

Plaintiff contends, however, that her approval of the sale was required, and she alleges that in obtaining that approval defendant Wirtz misrepresented the asset values by his nondisclosure of their market, as distinguished from book, value. Accordingly, she contends, she was fraudulently misled in making her investment decision respecting the sale of securities.

If the provisions of the instrument upon which she relies were as she contends, that contention would have considerable, although not necessarily conclusive, force. The close nexus between plaintiff's claim and the traditional state role in the administration of estates brings into question whether her claim is within the rights im-

plied under federal securities laws. *See Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). But if the alleged nondisclosures were material to a required investment decision, then, arguably, the 10b–5 claim can be maintained. *See O'Brien v. Continental Illinois National Bank & Trust Co., supra.*

In *O'Brien, supra,* plaintiffs were the respective trustees of nine separate trust funds. In each case plaintiffs had entered into an agreement with the defendant under which trust funds were turned over to the defendant for investment. Defendant was given the responsibility for making such investments in its sole discretion as it saw fit, subject to a fiduciary duty of due care. Plaintiffs had power to terminate the agreements at will but had no right to receive notice of or to be consulted about proposed investments and had no right to veto investment decisions. *Id.* at 57. In concluding that the failure to disclose certain facts to the plaintiffs did not occur "in connection with" the purchase of securities, the Court of Appeals for the Seventh Circuit stated:

> The important point for our analysis is the decision to which the nondisclosure related. If that decision is whether to purchase or sell a security, the nondisclosure is in connection with the purchase or sale. Here, however, that decision was not whether Continental [defendant] should buy or sell the securities in question, for the terms of the trust and agency agreements made that decision solely Continental's and plaintiffs had no voice in it. The decision to which the nondisclosure related was whether plaintiffs should terminate the trust or agency agreements or, perhaps, take some action against Continental. As Judge Flaum correctly stated in his memorandum of decision granting the motions to dismiss the federal claims,
>
>> [T]here was no investment decision to be made by plaintiffs and no such decisions were affected by any lack of information on plaintiffs' part. The "market transactions" were pure; the trust relationships were not. Rule

10b–5, however, protects the former and not the latter.

Id. at 60.

But the instrument upon which she relies does not require her approval. The will of James Norris gave the executors sole discretion to sell estate property by the following statement: ". . . I hereby give to them as such executors full power and authority at any time or times to sell, mortgage, pledge, exchange or otherwise deal with or dispose of the property comprising my estate upon such terms as they shall deem best . . . ." Since plaintiff had no voice in the decision to sell the stock in the three defendant corporations, any nondisclosure of material facts by defendants does not meet the "in connection with a purchase or sale" requirement of Section 10(b) and Rule 10b–5.

Susan Norris contends, however, that William Wirtz had severely restricted authority to purchase stock by the following terms in the will of James Norris: "Nothing herein contained shall be construed to prevent the individual trustee . . . from becoming a purchaser of any of such securities from any available source whatsoever provided he has the approval of the income beneficiaries *or their legal representatives* with respect to such purchase." This argument fails, however, since William Wirtz was not purchasing the stock but, rather, the closely-held corporations were the purchasers.

Plaintiff argues that the testator, in referring to the individual trustee, meant any closely-held corporation in which he held an interest. The will plainly discloses otherwise. James Norris well recognized that his assets in large measure were interests in closely-held corporations shared with Wirtz family members. He sanctioned retention of those assets, authorized his trustee to be active in management, granted their shareholders a second right of refusal, and provided a mechanism for valuing the shares for sale in the absence of a third party offer. The carefully spelled out procedures for disposing of shares in the closely-held

corporations are contrary to the suggestion that "individual trustee" was somehow shorthand for "closely-held corporation."

For the reasons stated, the motion to dismiss is granted.