719 F.2d 256
 Fed. Sec. L. Rep. P 99,520
Susan Mary NORRIS, Plaintiff-Appellant,
v.
William W. WIRTZ, individually and as trustee, Arthur M.
Wirtz, individually and as trustee, St. Louis Arena
Corporation, a corporation, Arena Bowl, Inc., a corporation,
and Wirtz Corporation, a corporation, Defendants-Appellees.
 No. 82-2644.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 12, 1983.
Decided Oct. 14, 1983.
 
 Edward J. Ross, Breed, Abbott & Morgan, New York City, Alan N. Salpeter, Mayer, Brown & Platt, Chicago, Ill., for plaintiff-appellant.
 Richard L. Manning, George D. Crowley, Crowley, Fuller & Manning, Lawrence Jay Weiner, Fredric Bryan Lesser, Weiner, Neuman & Spak, Kenneth E. Scranton, Chicago, Ill., for defendants-appellees.
 Before BAUER and WOOD, Circuit Judges, and ROSENN, Senior Circuit Judge.*
 HARLINGTON WOOD, Jr., Circuit Judge.**
 
 
 1
 This matter is on appeal from the district court's dismissal of plaintiff Susan Norris' complaint for failure to state a cause of action under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) (1976), and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. Sec. 240.10b-5 (1982). Norris v. Wirtz, 551 F.Supp. 46 (N.D.Ill.1982). Our jurisdiction is based on 28 U.S.C. Sec. 1291 (1976). Because we believe the district court erred in concluding that plaintiff's cause of action falls outside the ambit of the federal securities laws, we reverse the dismissal of plaintiff's complaint.
 
 I.
 
 2
 The plaintiff's father, James Norris, died in February 1966. His will named his wife, Mary Norris, and defendant William Wirtz as co-executors of his estate. The will also provided that, upon the closing of the estate, any remaining property was to be divided into two trusts, one for the benefit of Mary Norris and the other for the benefit of plaintiff Susan Norris. Defendant William Wirtz was to serve as trustee and William Wirtz's father, defendant Arthur Wirtz, was named successor trustee.
 
 
 3
 Among the estate's assets were shares of common stock in three closely-held corporations, St. Louis Arena Corporation, Arena Bowl, Inc., and Judge & Dolph, Ltd. Defendant Arthur Wirtz was chairman of the Board of Directors and his son, defendant William Wirtz, was president and a director of each of the three corporations. In addition, defendant Wirtz Corporation, owned by defendants William and Arthur Wirtz, held the controlling interest in each of the same three corporations. What stock the Wirtzes did not own in the three corporations were assets in the estate.
 
 
 4
 In 1967 and 1968, the co-executors of James Norris' estate, Mary Norris and defendant William Wirtz, filed petitions in probate court seeking leave on behalf of the estate to sell shares of each of the three closely-held corporations in the form of repurchase and redemption of the stock by the corporations. The potential for self-dealing by the Wirtzes is obvious and, according to the complaint, the Wirtzes took full advantage of the opportunity at the expense of the decedent's daughter. When the estate's stock interest in the St. Louis Arena Corporation and in Arena Bowl, Inc. were redeemed from the estate by those corporations, the Wirtz Corporation thereby became the sole owner of both corporations. The Wirtz Corporation, in a slightly different manner, directly purchased the estate's minority interest in Judge & Dolph, Ltd. Thus, when the dealing was over, the Wirtzes effectively controlled all three of the closely-held corporations in which the estate had held stock, and to that extent became more of a beneficiary under the will than did plaintiff, the decedent's daughter.
 
 
 5
 Before the stock transactions were routinely approved by the probate court, however, the defendants went to plaintiff several times when she was eighteen and nineteen years old and secured her approval of the stock sales. It was in the course of inducing her uninformed approval of the sales that the defendants allegedly made the false statements substantially affecting the value and fair price of the stocks they were thereby acquiring.
 
 II.
 
 6
 Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder were intended to provide a cause of action for any plaintiff who suffers an injury as a result of manipulative or deceptive practices made in connection with his or her sale or purchase of securities. Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977). The issue presented here is whether plaintiff Susan Norris actually had the power under the will to control the sale of the securities to the corporations controlled by defendants so as to establish a nexus between the misrepresentations made to the plaintiff by defendants and the securities sales.
 
 
 7
 The district court below concluded that although the plaintiff had standing to sue because of her position as a trust beneficiary of a securities sale, the misrepresentations made to plaintiff were only breaches of a trustee's fiduciary duties cognizable under state law. The court found that the plaintiff had no power to influence or control the defendant-trustee's investment decisions so that the defendant's misrepresentations to her were not made "in connection with the purchase or sale" of a security as required by the federal securities laws. Although we agree with the district court that plaintiff has alleged deception on the part of the defendants sufficient to satisfy Santa Fe Industries and agree with much of the court's discussion of standing, we disagree with its interpretation of plaintiff's ability under the will to control the stock sales at the time defendants' misrepresentations were made and consequently its determination that plaintiff has failed to state a cause of action under Section 10(b) and Rule 10b-5.
 
 
 8
 The complaint alleges that defendants misrepresented the value of the corporate assets and misrepresented that the proposed stock redemptions were in the best interest of the estate. At the present stage, involving an appeal from a decision to dismiss the complaint, the allegations in the complaint should be read liberally and the plaintiff should be entitled to the benefit of all inferences. Accordingly, we agree with the district court that plaintiff has made sufficient allegations of deception by the defendants to satisfy the requirements for a Section 10(b) or Rule 10b-5 violation announced in Santa Fe Industries. See Atchley v. Qonaar Corp., 704 F.2d 355, 359 (7th Cir.1983).
 
 
 9
 In addition to alleging manipulative or deceptive practices, a potential plaintiff must fit within the contours of the Birnbaum rule, established in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), and adopted by the Supreme Court in Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), to maintain an action under Section 10(b) or Rule 10b-5. This "standing" requirement was invoked for various prudential and policy reasons to limit the class of plaintiffs who may sue under the federal securities laws and differs from ordinary Article III uses of standing. See Eason v. General Motors Acceptance Corp., 490 F.2d 654, 657 (7th Cir.1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974) (pre-Blue Chip decision).
 
 
 10
 The Birnbaum rule requires that a private party have actually dealt in a security, either as a purchaser or a seller, to have standing to bring a federal cause of action for damages. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 747, 95 S.Ct. 1917, 1931, 44 L.Ed.2d 539 (1975). In this case, the actual sales of the securities held in trust were made by the co-executors of plaintiff's father's estate, and not by plaintiff. Nonetheless, the district court, relying principally on Heyman v. Heyman, 356 F.Supp. 958 (S.D.N.Y.1973), and Hackford v. First Security Bank of Utah, N.A., 521 F.Supp. 541 (D.Utah 1981), concluded that the plaintiff was a seller even though she did not--and indeed could not--personally perform the mechanics of the sale. The rationale behind the decision is that the plaintiff experienced the direct impact of the securities transaction, for she was the beneficiary of the trust involved.
 
 
 11
 This position is attractive. The plaintiff is not a bystander as contemplated in Blue Chip Stamps and to grant standing under these circumstances seemingly does not threaten the concerns expressed in Birnbaum. See, e.g., Kirshner v. United States, 603 F.2d 234, 240-41 (2d Cir.1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979) ("We think the beneficiary of a pension trust, like the shareholder in a derivative suit, has standing to attack securities frauds perpetrated or threatened by the trustees of his fund."); James v. Gerber Products Co., 483 F.2d 944, 948 (6th Cir.1973) ("[T]he courts have generally inclined to a logical and flexible construction of the term 'purchaser-seller' in order to accommodate the avowed purpose of Sec. 10(b) of protecting the investing public and of ensuring honest dealings in securities transactions."); accord Mallis v. Federal Deposit Insurance Corp., 568 F.2d 824, 828-30 (2d Cir.), cert. granted, 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977), cert. dismissed, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam) (pledgees of stock certificates have standing to sue under Section 10(b) and Rule 10b-5). This court anticipated this interpretation of the scope of the Birnbaum rule in O'Brien v. Continental Illinois National Bank & Trust Co., 593 F.2d 54 (7th Cir.1979). In O'Brien the plaintiffs, themselves trustees of pension funds, charged securities violations against Continental Bank, to which funds of the pension trust were turned over for investment. The plaintiffs argued that had the bank disclosed that it was purchasing securities for the pension trust funds in companies for which it was also a major creditor, they would have terminated the trust or agency agreement with the bank. This court wrote:
 
 
 12
 With respect to the purchases made by Continental, plaintiffs do not fit as neatly into the categories of persons to whom the Birnbaum rule denies the 10b-5 remedy. See Blue Chip Stamps, 421 U.S. at 737-738, 95 S.Ct. 1917 [at 1926].
 
 
 13
 Continental argues, however, that it and not plaintiffs purchased the stock and, therefore, the Blue Chip rule applies. Although some judges and commentators have interpreted Blue Chip as Continental does, we are unable to say categorically that plaintiffs, on whose behalf Continental bought, were not in any sense purchasers of the securities.
 
 
 14
 Id. at 59 (footnote omitted).
 
 
 15
 In O'Brien, we recognized that although the plaintiffs may have had standing under Section 10(b) and Rule 10b-5, a cause of action under those provisions could not be implied in the circumstances of that case. The O'Brien plaintiffs had no right to be consulted about the proposed investments nor to veto investment decisions. Consequently, the nondisclosures to plaintiffs were not made in connection with the sale of any security in which the plaintiffs were decision makers. We cautioned that "a court should be reluctant to imply a 10b-5 cause of action for wrongs that do not fall within Sec. 10(b)'s fundamental purpose of requiring full and fair disclosure to participants in securities transactions of the information that would be useful to them in deciding whether to buy or sell securities." Id. at 60 (citation omitted). Because the O'Brien plaintiffs had no investment decision to make regarding the securities, the nondisclosure did not affect a decision whether to "buy or sell the securities in question" but merely "whether plaintiffs should terminate the trust or agency agreements or, perhaps, take some action against Continental." Id. at 60.
 
 
 16
 Unlike O'Brien, however, the present case involves a plaintiff who had authority to make the investment decisions involving the securities sales in which the alleged misrepresentations were made. Although superficially concealed by the form of the transactions, the nexus between the alleged misrepresentations to plaintiff and the securities transactions are there in substance. James Norris' will states that the co-executors are to have full power to dispose of the estate's assets and to settle claims against it in the ordinary course of administration, but with an eye, of course, toward fulfilling the primary testamentary intention of funding plaintiff's and plaintiff's mother's trusts from the residue of the estate. The will provisions establishing plaintiff's trust provide that the trustee is generally to have full and unquestioned power to make investment decisions regarding the trust property. But the will does give James' Norris' daughter, plaintiff here, the power to approve the sale of any stock in the closely-held corporations beneficially owned by plaintiff when the purchaser is the individual trustee. The will states: "Nothing herein contained shall be construed to prevent the individual Trustee ... from becoming a purchaser of any such securities from any available source whatsoever provided he has the approval of the income beneficiaries ... with respect to such purchase." (R. 17, Ex. A at 11) (emphasis added). The district court reasoned that since defendant-trustee William Wirtz "was not purchasing the stock but, rather, the closely-held corporations were the purchasers," Norris v. Wirtz, 551 F.Supp. 46, 52 (N.D.Ill.1982), the will provision was inapplicable and plaintiff had no investment decision to make.
 
 
 17
 The will provision is aimed at preventing any self-dealing transaction by the individual trustee whereby the trustee purchases stock of the closely-held corporations held in trust or by the estate without the trust-beneficiary's prior approval. The provision would appear to apply with equal force to a purchase by the individual trustee made from the estate before the trust is funded or from the trust after the trust is funded, since the provision is intended to restrict any self-dealing by the individual trustee that could harm the trust-beneficiaries.[1] It would be anomalous to apply the provision to restrict purchases by the individual trustee only from the trust assets and not the estate assets; in either situation, the trust-beneficiary is the beneficial owner of the securities, since the securities held by the estate are to become the trust property once routine estate administration has occurred. In this case, plaintiff was clearly the beneficial owner of the securities held by the estate and had the authority to disapprove their sale to an individual trustee. The only question regarding the applicability of the will provision here, therefore, is whether defendant William Wirtz, as individual trustee, can be considered to be the purchaser of the securities even though the securities were nominally purchased by the closely-held corporations.
 
 
 18
 We believe that the purchases by the close corporations controlled by defendants William and Arthur Wirtz were in fact, or virtually, a purchase by defendant-trustee William Wirtz, so that plaintiff's prior approval of the sale was essential under the will. We think that the only reasonable interpretation of the testamentary provision is that it was intended to prevent any self-dealing transaction, regardless of the form, in which the individual trustee purchased securities beneficially owned by the plaintiff. Certainly the Wirtzes believed the testamentary provision to be applicable. Before each of the securities sales to the close corporations controlled by defendants, defendant William Wirtz, allegedly assisted by defendant Arthur Wirtz, solicited plaintiff's approval. Thus, although defendant William Wirtz sold the securities as co-executor, the will provision applied to the sale of the securities to him by virtue of his role as trustee-purchaser, because the purchases were made by William Wirtz and his father though their fully controlled corporations. Although the will provision could have been drafted more clearly, the testator obviously inserted it to give his daughter a say about the handling of the assets bequeathed to her for her benefit and use if the Wirtzes, who were appointed trustee and successor trustee, contemplated any self-dealing. The use of the close corporations controlled by the Wirtzes to complete the transactions here can neither conceal nor excuse the self-dealing that occurred. It was precisely to prevent this self-dealing that the testator gave his daughter the ultimate voice in making the investment decisions "in connection with" such transactions.
 
 
 19
 The broad proscription against fraud set forth in Section 10(b) and Rule 10b-5 is defeated in its remedial purposes by taking an unrealistic view of what is alleged to have happened in this case. See Herman & MacLean v. Huddleston, --- U.S. ----, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). Because we believe plaintiff's approval was required under the will, plaintiff fits within the contours of the Birnbaum rule and has stated a cause of action by alleging misrepresentations "in connection with" the sale of securities. Although this case could no doubt be remodeled into a state court suit, Congress gave plaintiff a choice. Plaintiff should have the opportunity to prove her federal claim.
 
 
 20
 The judgment dismissing the plaintiff's complaint is reversed. The case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 21
 BAUER, Circuit Judge, dissenting.
 
 
 22
 The majority opinion is so persuasive that, but for one important factual disagreement, I could have written it myself. Nevertheless, I must dissent because in my opinion the plaintiff did not have the power to control the trustee's investment decisions necessary to create federal jurisdiction under the Securities Exchange Act.
 
 
 23
 The difficulty in sustaining a cause of action in this case, as recognized by the district court, is that the plaintiff in fact had no power to control or even influence the defendant-trustee's decision to sell the securities. The will establishing the trust states: "The Trustee shall have full power to ... sell, exchange or pledge any or all of the trust property as he deems proper ... for such purposes as the Trustee deems advisable." The will also states: "[T]he decision and judgment of my said Trustee shall be conclusive, binding and final and no present or future income beneficiary shall question the decision or good faith of such Trustee." (R. 17, Ex. A at 8-10.) Similar statements grant the executors uncompromised power to administer the estate as a whole. Thus, the will clearly bars the plaintiff from influencing or challenging the trustee's decisions.
 
 
 24
 Because the plaintiff had no input into the decision to sell the stock, the defendants' misrepresentations to her were not made "in connection with the purchase or sale of any security." O'Brien v. Continental Illinois National Bank & Trust Co., 593 F.2d 54, 60 (7th Cir.1979). See Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 477, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977) ("[A] private cause of action under the antifraud provisions of the Securities Exchange Act should not be implied where it is 'unnecessary to ensure the fulfillment of Congress' purposes' in adopting the Act.").
 
 
 25
 The plaintiff argues in opposition to this conclusion that it is enough to state a cause of action that the plaintiff would have petitioned the probate court to disapprove the stock transaction. In O'Brien, this court discussed and rejected the argument that the plaintiffs' power to terminate an existing fiduciary relationship with the defendant who was charged with fraud was enough to state a cause of action under Section 10(b) and Rule 10b-5. Similarly, the ability to persuade a court to disapprove a proposed transaction is not encompassed by the concept "in connection with the purchase or sale of any security." See O'Brien, 593 F.2d at 60; cf. Gurley v. Documation Inc., 674 F.2d 253 (4th Cir.1982) (plaintiffs' allegation that they were prevented from piggybacking on a public offering does not involve sale of securities).
 
 
 26
 The plaintiff also argues that the will in fact granted her the power of approval because the defendant-trustee actually sold the trust's stock to himself. The will states: "Nothing herein contained shall be construed to prevent the individual Trustee ... from becoming a purchaser of any of such securities ... provided he has the approval of the income beneficiaries ...." (R. 17, Ex. A at 11.) In this case, the closely-held corporations, and not the trustees, purchased the stock. The plaintiff correctly notes, however, that trust law recognizes that when a trustee sells trust assets to a corporation of which he owns a substantial part of the stock, he may have breached his fiduciary duty of loyalty. Nevertheless, because that breach of duty arises when the securities were sold, the breach does not bestow on the plaintiff the power to control the sale itself, which is required for the fraud to be "in connection with the sale" of securities. In other words, the plaintiff must show that the completed transaction violated trust law; then the plaintiff may recover any gains made by the trustee at the expense of the trust. The plaintiff does not gain the power to affect the long-completed securities transaction. Additionally, I cannot subscribe to the majority's broad interpretation of the will as applying to all instances of apparent self-dealing.
 
 
 27
 This type of case is far better left to state courts. Federal securities law does not contemplate the exercise of federal jurisdiction in cases requiring resolution of purely state trust law issues as a prelude to deciding whether fraud existed in a transaction which the plaintiff, at the time, could not control. Accordingly, I respectfully dissent.
 
 
 
 *
 The Honorable Max Rosenn, Senior Judge of the United States Court of Appeals for the Third Circuit, is sitting by designation
 
 
 **
 Although Judge Bauer dissents, he graciously contributed to the initial portions of this opinion
 
 
 [1]
 We also note that the restrictive provision applies to purchases of "any of such securities," which refers to all the closely-held corporation stock owned by the decedent that became assets in the estate. (R. 17, Ex. A at 10)