**Sue Ellen Baker JAMES, Plaintiff-Appellant,**

**v.**

**GERBER PRODUCTS COMPANY, The Old State Bank of Fremont, et al., Defendants-Appellees.**

**No. 73–1022.**

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1973.

Decided Sept. 5, 1973.

John H. Schomer, Jackson, Mich., for plaintiff-appellant; Domke, Marcoux, Allen & Beaman, Jackson, Mich., of counsel.

Roger M. Clark and Joel E. Krissoff, Grand Rapids, Mich., for defendants-appellees; Warner, Norcross & Judd, Grand Rapids, Mich., on brief for Gerber Products Company, and others; Hillman, Baxter & Hammond by Douglas W. Hillman, Grand Rapids, Mich., on brief for Old State Bank of Fremont, and others.

Before PECK, MILLER and LIVELY, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This appeal presents the difficult question as to whether a beneficiary of a testamentary trust from which securities are sold has proper standing to sue under Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.-10b–5. The District Court dismissed the action for lack of standing. We conclude that appellant possessed the requisite standing.

Plaintiff-appellant is the beneficiary of two trusts from which 15,000 shares of Gerber Products Co. stock were sold. Two transactions are involved and each included a sale of Gerber stock by the trustee to the defendant-appellee, Gerber Products Co. The first transaction involved a 1966 sale of 10,000 shares; the second was of 5,000 shares, sold in 1968. Both Gerber and the defendant-appellee, Old State Bank, which operates as trustee, are located in Fremont, Michigan, a community of less than 4,000. The trustee sold the shares directly to Gerber, rather than through a broker, at prices equal to the New York Exchange closing price for the stock on the dates of the sales. The transactions were reflected in the trustee's annual accountings filed in the local probate court, but the buyer's identity was not disclosed. Corporate officers and directors from Gerber were members of the Bank's Trust Committee and of the Bank's Board of Directors. In addition, Gerber maintained substantial deposits in the Bank during the period in question.

Appellant complains as to the interlocking relationship between the Board of Directors of Gerber and the Board and Trust Committee of the Bank. She charges that inside information furthered the stock purchase scheme, that material facts were withheld from the proxy statements and that she did not become aware of them until February, 1970. The Gerber stock was sold in 1966 at an "unusually low fair market value," appellant alleges, to fund an executive stock option plan with an inexpensive stock reserve. At least some of the dual capacity executives participated in the stock plan. The stock sold in 1968 at a higher price.

According to the appellant, these activities create two causes of action. The first alleges violation of the Securities Act of 1934, § 10(b), 15 U.S.C. § 78j(b); and SEC Rule 10b–5, 17 C.F.R.

§ 240.10b–5.[1] The second cause of action is based on alleged violations of state (Michigan) fiduciary laws, M.C.L. A. § 704.37, a claim based on pendent jurisdiction.

In the District Court, the defendants-appellees denied any fraud or deception in connection with the transactions in issue and claimed that the sales were completely fair, were prudent from a trust investment standpoint, were fully reported in the trustee's annual accounting and were made in compliance with the SEC rules governing an issuer's purchase of its own listed shares. In addition, the appellees raised separate defenses based on the appellant's lack of standing to maintain an action under Rule 10b–5 since it is apparent from the face of the complaint that the appellant was not a party to the transactions which she claims violated § 10(b). The standing defenses were treated as motions to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b) of the Federal Rules of Civil Procedure. A hearing was held in the District Court, briefs were filed and the Court ruled that the appellant lacked standing to maintain an action under Rule 10b–5. Both the 10b–5 claim and the pendent state law claims were dismissed, the latter without prejudice. This appeal was perfected from the District Court's order granting the dismissal.

The Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., were enacted in part to restore the public's confidence in the stock market following the public investment frauds of the 1920's and the market crash of 1929. See, A. Bromberg, Securities Laws: Fraud—SEC Rule 10B–5, § 2.2 at 21–22.9 (1969). Section 10(b)[2] of the 1934 Act prohibited fraudulent securities transactions and pursuant to that section, the Securities Exchange Commission in 1942 enacted Rule 10b–5.[3] Promulgated as a broad anti-fraud provision, the Rule was designed to reach a wide scope of deceptive activities in securities transactions without regard to the limitations of a common law action for fraud. See SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 193–195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); also, Hooper v. Mountain States Securities Corp., 282 F.2d 195, 201 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961).

The Rule does not expressly call for civil liability but in the first reported civil action based on 10b–5, Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946), it was impliedly recognized that civil liability existed.[4] The result spawned a vast body of federal common law under the statute and rule. Concomitantly, limitations as to plain-

---

1. In the District Court appellant also alleged violations of § 14(e) of the 1934 Act, 15 U.S.C. § 78n(e), but those alleged violations are not presented here.

2. Section 10(b) provides:
   "To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

3. Rule 10b–5, 17 C.F.R. 240.10b–5, provides:
   "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange
   "(1) to employ any device, scheme, or artifice to defraud,
   "(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading or
   "(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

4. The case of Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6 at 13 n.9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), acknowledges the private right of action under § 10(b).

tiffs eligible to sue also developed. One such formidable restriction[5] is referred to as the "purchaser-seller" requirement which was established in the celebrated case of Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356.[6] That case involved a derivative action by minority shareholders of Newport Steel complaining that the majority shareholder sold his 40% interest for approximately twice its market value after misrepresenting and rejecting an alleged attractive merger offer that would have been highly profitable for all shareholders. The plaintiffs had not purchased or sold in reliance on the alleged misrepresentation and were complaining of the abuse of the fiduciary obligations by the defendant, a corporate director and insider. The Court of Appeals found that the plaintiffs did not have standing to sue and upheld the dismissal of the complaint on the dual ground that § 10(b) ". . . was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale of or purchase of securities rather than at fraudulent mismanagement of corporate affairs and that Rule [10b–5] extended protection only to the defrauded purchaser or seller." 193 F.2d at 464.

Birnbaum's standing requirement has been the subject of considerable criticism,[7] but subsequent decisions have tempered its effect by rejecting a strict view of the purchaser-seller concept without repudiating Birnbaum. See, e. g., Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (standing granted since shareholder was forced to sell his shares at a later time); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967) (defrauded stockbroker granted standing when client refused to pay for ordered securities); Hooper v. Mountain States Securities Corp., supra (trustee in bankruptcy granted standing to sue for injured corporation); Schoenbaum v. Firstbrook, 405 F.2d 200, reviewed en banc, 405 F.2d 215 (2d Cir. 1968), cert. denied, sub. nom., Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969) (shareholder can bring derivative action).

It appears, moreover, that the purchaser-seller restriction has been abandoned in suits seeking prospective injunctive relief. In Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967), minority shareholders sought to enjoin a controlling shareholder from depressing the price of the corporation's stock by manipulation. Since the shareholders had not capitulated to the manipulation and sold their stock, they were neither purchasers nor sellers of the securities in the strict sense. However, the Court granted injunctive relief, reasoning that the minority shareholders were the "logical plaintiffs" to enforce the Act. See also, Britt v. Cyril Bath Co., 417 F.2d 433 (6th Cir. 1969); Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970), cert. denied, sub. nom., Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290. In subsequent cases, however, the Second Circuit has emphasized that despite the Mutual

5. Other attempts to restrict Rule 10b–5 are detailed in Herpich v. Wallace, 430 F.2d 792, 805 n.12 (5th Cir. 1970).

6. Cited with approval by this Court in Simmons v. Wolfson, 428 F.2d 455 (6th Cir. 1970), cert. denied, 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971).

7. See, e. g., Kellogg, The Inability To Obtain Analytical Precision Where Standing To Sue Under Rule 10b–5 Is Involved, 20 Buffalo L.Rev. 93 (1970); Lowenfels, The Demise of the Birnbaum Doctrine: A New Era for Rule 10b–5, 54 Va.L.Rev. 268 (1968); Ruder, Current Developments in the Federal Law of Corporate Fiduciary Relations—Standing To Sue Under Rule 10b–5, 26 The Bus. Lawyer 1289 (1971); Ryan, Bankers Life: Birnbaum Revisited, 4 Loyola (Chicago) L.Rev. 47 (1973); Whitaker, The Birnbaum Doctrine: An Assessment, 23 Ala.L. Rev. 543 (1971). In addition, since 1967 the SEC has requested abandonment of the requirement. Ryan, Bankers Life: Birnbaum Revisited, supra, n.12, at 49 and n.51 at 57.

*Shares* decision regarding injunction suits, the *Birnbaum* rule remains applicable to damage suits. Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970).

From a review of these cases, we are unable to devise a precise common standard for application to the case before us, but it would appear though that where the alleged deceptive practices have led or would lead the shareholder into a completed transaction giving rise to a § 10(b) suit, the courts have generally inclined to a logical and flexible construction of the term "purchaser-seller" in order to accommodate the avowed purpose of § 10(b) of protecting the investing public and of ensuring honest dealings in securities transactions.

Appellant argues that the recent Supreme Court decision in Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), has altered the *Birnbaum* standing rule. The case involved a state liquidator representing the rights of the creditors and suing in the name of Manhattan Casualty Co. Rule 10b–5 violations by Manhattan's sole shareholder were alleged. The shareholder had purchased the stock in Manhattan from Bankers Life for $5 million by inducing a bank to issue a check without collateral as payment. The new owner then caused Manhattan to sell its U. S. Treasury bonds, the proceeds of which were turned over to the bank as payment for the advance of the $5 million earlier that day. A worthless $5 million certificate of deposit was then obtained to make it appear both to Manhattan's directors and on the corporation's books that the proceeds of the bond sale had been used to purchase the certificate. The Court's opinion is explicitly based on the only one of the three transactions, i. e., the bond sale, in which the defrauded plaintiff was not directly involved as the purchaser or seller of the securities. In fact, the Court specifically declined to

consider the purchaser-seller standing requirement. 404 U.S. at 13 n.10, 92 S.Ct. 165. Therefore we conclude that *Bankers Life* has not repudiated the *Birnbaum* standing requirement. Accord: Haberman v. Murchison, 468 F.2d 1305, 1311 n.5 (2d Cir. 1972); Mount Clemens Industries, Inc. v. Bell, 464 F.2d 339, 344 (9th Cir. 1972). Contra: Tully v. Mott Supermarkets, Inc., 337 F.Supp. 834 (D.N.J.1972). See also, Entel v. Allen, 270 F.Supp. 60 (S.D.N.Y.1967).

We conclude that the interests intended to be served by Rule 10b–5 and the *Birnbaum* decision are best promoted by providing standing to the appellant. Because of the nature of our holding, we do not find it necessary to reach the question of *Birnbaum's* continued viability in this Circuit. A principal purpose of § 10(b) and Rule 10b–5 is to protect purchasers and sellers of securities from those who deal unfairly with them. SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 847 (2d Cir. 1968) (en banc), cert. denied, sub. nom., Coates v. SEC, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). This broad purpose of investor protection is of course consistent with the broad language of both the statute and the rule. As described earlier, the climate to which the statute was a response gives weight to the conclusion that the intent of the enactment was to repair the market's integrity by proscribing manipulation and inducement designed to encourage investors to engage in transactions in which they would not ordinarily engage. See, Whitaker, The Birnbaum Doctrine: An Assessment, *supra* at 591.

Appellant does not claim that she took any action with respect to the subject transactions nor that she had the power to do so. But she does imply that had she the power or even foreknowledge of the transaction, she would have sought to prevent the transactions. As beneficiary, she was the person who was to be benefitted by the sale and thus she had the interests of a de facto seller. In this respect she is much closer to the

transaction than the plaintiffs in the *Birnbaum* case. In *Birnbaum*, the plaintiffs were not involved to any extent in the sale of securities which were the subject of the complaint. This point was described in Heyman v. Heyman, 356 F.Supp. 958, 965 (S.D.N.Y.1973), as the ". . . nexus missing in the line of cases which follow *Birnbaum*." We agree. In that case, the beneficiary of a trust which was funded by the proceeds of a sale of corporate stock claimed that the defendant corporation purchased the shares at less than their fair market value. The sale was pursuant to a stockholders' agreement requiring the corporation to purchase, upon the death of any stockholder, all of the stock owned by the decedent stockholder at its fair market value. Plaintiff complained that the sale was based on book value and the true value of the shares was concealed from her. The District Court found that the beneficiary did have proper standing to sue for the alleged violation of Rule 10b–5. It held that conferring standing was consistent with the purpose of *Birnbaum* and emphasized the beneficiary's close connection with the sale.

On the other hand, Gerber makes the argument that "[the] distinction between investor [meaning trustee] interests and beneficial interests with respect to trust property may properly serve as the basis for an exclusive definition of the scope of Rule 10b–5." We have difficulty with that argument for the reason that the trustee's interest in consummating the transactions at issue was to benefit the beneficiary. The very niceties of Gerber's legal distinctions may be misleading. The trustee's promotion of any interest other than the beneficiary's, such as its own, would be fraudulent. Therefore, as applies to these circumstances, separating the legal and beneficial incidents of ownership in the property is a mere technical argument since there is only one interest at stake

and that is the beneficiary's. No one here argues that if the trustee had been defrauded into selling the shares, it could not initiate an action for relief under 10b–5. But of course, if the trustee was a party to any fraud, it could scarcely be expected to institute such an action. Consequently, were we to accept the appellee's argument, we would be faced with an unacceptable situation where alleged fraudulent securities transactions occurred which, if true, are prohibited by federal statute and regulation but the party in interest who actually suffered the fraud would be without an avenue of redress in the federal courts.

■ Rule 10b–5 was intended to prohibit all fraudulent schemes in connection with the purchase or sale of securities and it has been often stated that novel or atypical transactions are not to be excluded from its ambit. See, e. g., A. T. Brod v. Perlow, *supra*; Vine v. Beneficial Finance Co., *supra*. We view *Birnbaum's* import as denying shareholders a federal courtroom to litigate all matters of alleged corporate fraud under the auspices of Rule 10b–5. We agree that the seemingly infinite varieties and complexities of fraud which are possible in today's securities markets militate strongly against a federal inquiry into each allegation of fraud in securities transactions, but our decision is not inconsistent with those considerations.

Since neither the statute nor the Rule require a purchaser-seller restriction,[8] the decision in *Birnbaum* can be viewed not only as reflecting a fear of overabundant litigation but also as avoiding a field traditionally reserved to the states. As to the latter, under *Birnbaum* federal courts have denied jurisdiction to suits under § 10(b) where the fraud alleged is simply corporate mismanagement or a breach of fiduciary duty for which there is an adequate state remedy.[9] See, Herpich v. Wallace, 430 F.2d

8. See footnotes 2 and 3, *supra*.

9. This is not to suggest that we do not view the matter as the type of fraud § 10(b)

792, 808 (5th Cir. 1970); Simmons v. Wolfson, *supra*. However, in the *Bankers Life case*, cited *supra*, the Supreme Court, speaking through Mr. Justice Douglas, clearly implied that federal securities law was appropriate in a fraud situation notwithstanding the existence of an available state remedy. 404 U.S. at 12, 92 S.Ct. 165, 30 L.Ed.2d 128. Adding support to that implication is the fact that the inexorable growth of law with respect to § 10(b) demonstrates that for policy reasons private enforcement should be encouraged to reduce the incidence of fraud and to effectuate the purpose of the statute. Too, we are unable to ignore the caution of *Bankers Life*, 404 U.S. at 12, 92 S.Ct. 165, 30 L.Ed.2d 128, to view § 10(b) "flexibly" rather than "technically or restrictively." [10] In viewing § 10(b) flexibly, we are satisfied that the proscription of § 10(b) against fraud "in connection with the purchase or sale of any security" is furthered and that we remain within the purpose of *Birnbaum* to exclude corporate mismanagement suits unrelated to securities transactions in the federal courts.[11]

In addition to Heyman v. Heyman, *supra*, which supports our conclusion, two other reported cases discuss a trust beneficiary's standing under Rule 10b–5. In Rippey v. Denver United States National Bank, 260 F.Supp. 704 (D.Colo. 1966), the action was dismissed against the plaintiff trust beneficiaries for lack of standing. As contingent beneficiaries of two testamentary trusts, plaintiffs charged that the trust asset was sold for $3,500,000 below its actual value. In bringing their derivative action on behalf of the trust, they argued that ". . . the test for determining who is the defrauded seller (Rule 10b–5) should be the person who suffers from the fraud. . . ." *id*. at 713. Al-

though the Court acknowledged interest in the argument, it concluded that the rule did not encompass such a meaning. We simply disagree with that conclusion.

The other reported case is Schoenbaum v. Firstbrook, *supra*, wherein the Court used the example of a trust beneficiary to indicate persons whom it viewed as not having standing to sue in 10b–5 actions. As the Court stated:

"[T]he purposes of the Securities Exchange Act, and more particularly, § 10(b), would normally not be furthered by permitting persons on whose behalf others buy, sell and trade to bring actions under § 10(b) against their agents. For example, the beneficiary of a trust agreement does not have an implied civil cause of action under § 10(b) and Rule 10b–5 against a trustee who, with full knowledge of all material information, sells shares from the trust corpus in an arm's length transaction for what the beneficiary considers to be inadequate consideration. If the trustee made a poor decision after considering the material information, the beneficiary's loss is not of the sort which § 10(b) was meant to prevent and even though a literal interpretation of the language in Rule 10b–5 could cover the trustee's acts, the beneficiary is not entitled to bring a civil action in reliance upon § 10(b)'s criminal liabilities." 405 F.2d at 212.

However, not only is this passage dictum, but the circumstance of an interlocking directorate such as presented here constitutes a much different circumstance than the "arm's length transaction" present in *Schoenbaum*.

The judgment of the District Court is reversed and the cause remanded for further proceedings consistent with this opinion.

---

was designed to prohibit. We address the item of available state remedies since the appellees contend the matter at issue is merely a matter for state court determination.

10. See also, Affiliated Ute Citizens v. United States, 406 U.S. 128, 151, 92 S.Ct. 1456, 31

L.Ed.2d 741 (1972); Mader v. Armel, *supra* 402 F.2d at 160.

11. Because of the narrow scope of our holding, any fears as to over-abundant litigation arising as a result of our decision here are without foundation.