**GRANADA INVESTMENTS, INC., Plaintiff,**

v.

**DWG CORPORATION, et al., Defendants.**

No. C89–641.

United States District Court, N.D. Ohio, E.D.

July 13, 1989.

James A. Smith, Frances Floriano Goins, Stacy Ballin, Squire, Sanders & Dempsey, Cleveland, Ohio, for plaintiff.

Norman S. Jeavons, John P. Witri, Baker & Hostetler, Cleveland, Ohio, for defendants.

## ORDER

LAMBROS, District Judge.

This matter is before the Court on a motion to dismiss filed by defendants DWG Corporation, Victor Posner, Steven Posner, Melvin R. Colvin, Bernard I. Posner, Russell A. Boyle, Marco B. Loffredo, Jr., William L. Pallot, Leonard H. Roberts, H. Douglas Kingsmore, Martin J. Posner, Thomas A. Prendergast, Roger D. Stake, and Brenda Nestor, (DWG) on April 24, 1989. By their motion, defendants move for a dismissal, pursuant to Fed.R.Civ.P. 12(b)(6) and 23.1, of Count Three of plaintiff Granada Investment's (Granada) Verified First Amended Complaint (Complaint) on grounds that the complaint fails to state a claim upon which relief can be granted and fails to properly demand the requested relief from DWG's directors. Defendants further seek dismissal, under Fed.R.Civ.P. 23.1, of all derivative claims on the basis that plaintiff does not fairly and adequately represent DWG's shareholders. Finally, defendants urge the Court to dismiss, pursuant to Fed.R.Civ.P. 12(b)(4), the individual defendants due to insufficient process. Defendants also request leave to file an answer to the complaint within ten days of the Court's ruling on this motion. Defendants filed an answer on June 29, 1989 and, thus, their motion for leave to file such answer is moot.

Plaintiff Granada Investments, a Delaware corporation with its principal place of business in New York, brings this action for declaratory and injunctive relief on its own behalf and derivatively on behalf of DWG, an Ohio corporation with its principal place of business in Florida, against DWG, as nominal defendant, and all of DWG's directors to remedy breaches of fiduciary duties of care, loyalty, trust, and fair dealing by directors and violations by these directors of Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b).

Suing individually and derivatively on behalf of DWG, Granada alleges in Count One and Count Two certain breaches of fiduciary duties and other violations of Ohio statutory and common law by the directors of DWG. In Count Three, plaintiff derivatively raises claims against the DWG directors of violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and the Securities and Exchange Commission regulations promulgated thereunder, including Rule 10b–5, 17 C.F.R. § 240.10b–5, prohibiting the use of manipulative and deceptive devices facilitating a fraud or deceit upon any person in connection with the purchase or sale of any security.

*Standing Requirements of Section 10(b)*

■ Defendants seek dismissal of Count Three on grounds that Granada lacks standing to bring a claim under Rule 10b–5. The protections of Rule 10b–5, defendants argue, extend only to defrauded purchasers or sellers of securities. Defendants emphasize that Granada does not claim that DWG was wrongfully induced to buy or sell stock as a result of alleged misrepresentations of the directors, but rather, as the complaint reflects, that the directors "artificially manipulated and influenced the market value of DWG's stock and depressed its value to the detriment of DWG and those persons who traded in its stock ..." Without a showing by plaintiff that it qualifies as a purchaser or seller of DWG securities, defendants argue, its claims brought pursuant to the Exchange Act must be dismissed.

Generally, parties are precluded from maintaining an action under Rule 10b–5 if they lack the status of either a purchaser or seller of the securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). The *Birnbaum* rule, derived from the language of the Exchange Act making unlawful any deceptive or manipulative device employed in connection with the purchase or sale of any security, reflects the intent

of Rule 10b–5 to remedy the "type of misrepresentation or fraudulent practice usually associated with the sale of or purchase of securities rather than ... fraudulent mismanagement of corporate affairs." *James v. Gerber Products Co.*, 483 F.2d 944, 947 (6th Cir.1973).

Plaintiff argues that the purchaser-seller requirement is inapplicable because suits for injunctive relief, as opposed to those for monetary damages, under Section 10(b) of the Exchange Act may be maintained by plaintiffs who are not actual purchasers or sellers of the securities in question. *Kahan v. Rosenstiel*, 424 F.2d 161 (3rd Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *Mutual Shares Corp. v. Genesco*, 384 F.2d 540 (2nd Cir.1967); *see also James v. Gerber Products Company*, 483 F.2d 944 (6th Cir.1973). This exception to the purchaser-seller rule, plaintiff contends, survives *Blue Chip*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), because the Supreme Court expressly limited its holding to private suits for monetary damages. Defendants respond that the Court in *Blue Chip*, though silent on the question of whether the purchaser-seller rule limits the eligible class of plaintiffs in actions for injunctive relief, nevertheless, articulated policy considerations that would be compromised by a relaxed standing rule.

Some courts have broadly interpreted *Blue Chip*, holding that the purchaser-seller requirement applies not only to damage suits but to suits for injunctive relief as well. *See, e.g., Cowin v. Bresler*, 741 F.2d 410 (D.C.Cir.1984); *Krueger Co. v. Kirkpatrick, Pettis, Smith, Polian, Inc.*, 466 F.Supp. 800 (D.Neb.1979); *Wright v. Heizer Corp.*, 411 F.Supp. 23 (N.D.Ill.1975), *aff'd in part*, 560 F.2d 236 (7th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). Other courts, however, have concluded that *Blue Chip* does not repudiate exceptions to the *Birnbaum* rule in actions for equitable relief. *See, e.g., Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187 (3rd Cir.1976); *Hanna Mining Company v. Norcen Energy Resources Limited*, 574 F.Supp. 1172 (N.D.Ohio 1982); *Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482 (D.Del.1984); *Fuchs v. Swanton Corp.*, 482 F.Supp. 83 (S.D.N.Y.1979); *USG Corp. v. Wagner & Brown*, 689 F.Supp. 1483 (N.D.Ill.1988).

This Court embraces the view that suits for prospective injunctive relief pursuant to Section 10(b) of the Exchange Act may be brought by plaintiffs who are not actual purchasers or sellers. While this Court recognizes the continued vitality of the *Birnbaum* rule in damage suits arising out of Section 10(b), it does not believe that *Blue Chip* extends the strict standing requirements to actions for equitable relief.

The rationale provided by the Supreme Court in *Blue Chip* for a purchaser-seller rule in Section 10(b) damage suits fails to support such a rule in actions for injunctive relief. In *Blue Chip*, the Court expressed concern that the absence of a stringent standing rule for Section 10(b) damage suits would lead to a torrent of suits of questionable merit and validity. The Court warned that a plaintiff "who neither purchases nor sells securities but sues instead for intangible economic injury ... is more likely to be seeking a largely conjectural and speculative recovery in which the number of shares involved will depend on the plaintiff's subjective hypothesis." *Blue Chip*, 421 U.S. at 734, 95 S.Ct. at 1925. Absent the *Birnbaum* rule, the Court explained, a plaintiff would need to show merely that he had declined to purchase or sell stock by reason of a defendant's violation of Rule 10b–5. While such a plaintiff might have failed to act as a result of misrepresentations contained in a prospectus, he might just as well have refrained from acting as a result of information published in the financial pages of a local newspaper. *Id.* at 746, 95 S.Ct. at 1930. Proof of a plaintiff's reliance on a misrepresentation, therefore, would be dependent upon uncorroborated oral evidence, incapable of documentary verification and virtually impossible to rebut. *Id.* Suits for injunctive relief, however, do not trigger such concerns. A plaintiff seeking injunctive relief must demonstrate, through the use of substantial and verifiable evidence, that he will be injured by the continuation of past and present wrongdoing. *See,*

*Hundahl v. United Benefit Life Insurance Co.,* 465 F.Supp. 1349, 1358 (N.D.Tex. 1979); *Fuchs v. Swanton Corp.,* 482 F.Supp. 83, 90 (S.D.N.Y.1979).

The Court further explained that the *Birnbaum* rule reduced the danger of vexatious litigation potentially resulting from a widely expanded class of plaintiffs under Rule 10b–5. *Blue Chip,* 421 U.S. at 739, 95 S.Ct. at 1927. Without the purchaser-seller requirement, plaintiffs may easily initiate suits that, regardless of the improbability of the allegations, are "virtually impossible to dispose of prior to trial other than by settlement." *Id.* at 742, 95 S.Ct. at 1928. Such a danger of vexatious litigation solely for its settlement value simply does not inhere in suits for injunctive relief.

What does inhere in suits for equitable relief is the opportunity for shareholders to protect their rights and assist in the enforcement of the federal securities laws. *See James v. Gerber Products Company,* 483 F.2d 944 (6th Cir.1973). The policies embodied in the Exchange Act of eliminating deceptive and unfair practices in securities trading and protecting the public from inaccurate and misleading information are clearly advanced by permitting aggrieved shareholders to bring suits to enjoin wrongful acts. *See Tully,* 540 F.2d 187, 195 (3rd Cir.1976).

*Demand Requirements for Derivative Actions*

Defendants further urge the dismissal of Count Three of the complaint on grounds that plaintiff failed to make a demand on the directors of DWG for the relief sought by its Rule 10b–5 claims. Specifically, defendants maintain that plaintiff made no effort to obtain, directly from DWG directors, the issuance of the curative press release sought in its complaint, nor did plaintiff provide adequate reasons for this omission.

Under the Federal rules, in a derivative action by shareholders to enforce a right of a corporation, the complaint must

> allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if

necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

Fed.R.Civ.P. 23.1. The rationale for the Rule is premised on the policy that corporations should have the opportunity to remedy alleged wrongs without litigation. *See Shlensky v. Dorsey,* 574 F.2d 131, 141 (3rd Cir.1978); *Leff v. CIP Corporation,* 540 F.Supp. 857, 868 (S.D. Ohio 1982). With the requirement that shareholders first make demand, directors are afforded the opportunity to carry out their duties as managers of the corporation's affairs. *Matter of Consumers Power Co. Derivative Litigation,* 111 F.R.D. 419, 424 (E.D. Mich.1986). Moreover, as corporate managers, directors may be better suited to evaluate alternative remedies, thus resolving grievances without burdensome and expensive litigation. *See Lewis v. Graves,* 701 F.2d 245, 247 (2nd Cir.1983).

■ Despite these significant policy considerations supporting the exhaustion of intracorporate remedies, demand on directors is not necessary if the effort would be futile. *Leff,* 540 F.Supp. at 868, citing *In re Western Tool & Mfg. Co.,* 142 F.2d 404, 408 (6th Cir.1944), *rev'd on other grounds,* 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945); *Fradkin v. Ernst,* 571 F.Supp. 829 (N.D.Ohio 1983). Demand is presumptively futile where the directors are "antagonistic, adversely interested, or involved in the transactions attacked." *Lewis v. Graves,* 701 F.2d 245 (2nd Cir. 1983); *See also Leff v. CIP Corp.,* 540 F.Supp. 857, 868 (S.D.Ohio 1982) (when it is evident from the complaint that the directors of the corporation would oppose the derivative suit, formal demand on the directors is considered futile and unnecessary); *accord In re Dayco Corp. Derivative Securities Litigation,* 99 F.R.D. 616 (S.D.Ohio 1983). Merely alleging futility will not suffice, *Leff,* 540 F.Supp. at 868 citing *Lucking v. Delano,* 117 F.2d 159, 160 (6th Cir.1941) (per curiam); rather, in accordance with Rule 23.1, plaintiff must state with particularity the reasons for circumventing the demand requirement.

■ In its complaint, Granada states that no demand to bring this action was made upon the directors of DWG, and that any such demand would have been futile. In support of this conclusion, plaintiff reasons that the participation and acquiescence of the directors in a variety of wrongful acts alleged in the complaint prevents them from championing this suit. In addition, plaintiff asserts that the directors of DWG are beholden and indebted to defendant Victor Posner and, therefore, could not impartially consider a demand by the shareholders to bring action against Posner.[1] Throughout the complaint, plaintiff alleges with particularity numerous instances of conduct by the defendant-directors that raise serious doubts about the efficacy of demand in this case. Details set forth in the complaint concerning plaintiff's efforts to present a merger proposal to the shareholders of DWG, defendant-directors' response to the proposal, defendant-directors relationship to Victor Posner and entities in which he owns or controls, all suggest to this Court that demand with respect to Count One and Count Two would clearly have been futile.

Defendants, however, focus their attack on plaintiff's failure to make demand on the directors to remedy violations of federal securities laws alleged in Count Three. Specifically, defendants maintain that plaintiff failed to comply with Rule 23.1 by neglecting to make demand on DWG directors to issue a curative press release. Defendants' argument is unpersuasive. The reasons provided in plaintiff's complaint for its decision not to make demand on defendant-directors, and bolstered by the various allegations, provide ample justification for plaintiff's conclusion that such effort would be futile in connection with all alleged violations. From the face of plaintiff's complaint, it appears "with reasonable certainty" that the directors could not or would not act. *In re Western Tool & Mfg. Co.*, 142 F.2d 404, 406 (6th Cir.1944), *rev'd on other grounds*, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945).[2] Accordingly, this Court finds that demand is justifiably excused with respect to all of the plaintiff's claims.

### Adequacy of Representation

■ Defendants further contend that plaintiff, as a stockholder bringing suit on causes of action derived from the corporation, is not an adequate representative of the interests of DWG's shareholders within the meaning of Fed.R.Civ.P. 23.1, and thus should be foreclosed from bringing this action. Defendants argue that plaintiff's primary interests in bringing this suit are "manifestly antagonistic" to the interests of the other shareholders. Granada's main purpose in maintaining the derivative claims, defendants assert, is to effectuate a merger with DWG, rather than to protect the rights of aggrieved shareholders.

1. Plaintiff, in its complaint, provides the following reasons for its claim of futility:

a. This action cannot be properly prosecuted by the directors of DWG because they have participated in, caused, acquiesced in, or have personally benefited from the acts herein complained of;

b. Such demand would require DWG's directors to sue themselves as they have all participated or acquiesced in the wrongs alleged herein;

c. To permit this action to be prosecuted by the same individuals against whom liability is sought would obviously be a futile act and place the prosecution of this action in hostile hands; and

d. Defendant Victor Posner exercises a controlling influence over the other directors because each of them receives substantial pecuniary and nonpecuniary benefits from Posner and his myriad of companies. Consequently they are beholden and indebted to Posner and are thus unable to impartially consider a request to prosecute an action against him.

2. Although the Court is satisfied that the face of the complaint supports a finding of futility, plaintiff's correspondance with DWG's Board of Directors further illustrates the recalcitrance of the defendants in this matter. Plaintiff sent two letters to the directors requesting that the board formally consider and evaluate Granada's merger proposal. *See* Plaintiff's Letters of Mr. Jeffrey N. Ostrager, March 14, 1989 and March 24, 1989. The Board of directors of DWG, in response to these letters, stated that it was "under no duty to meet with Mr. Heine [Granada's Chairman and Chief Executive Officer] to discuss [Granada's] purported merger offer nor [was] DWG under any obligation to expend any of its rsources in connection with evaluating the purported offer." Letter of Lawrence A. Blatto, March 28, 1989.

In relevant part, Rule 23.1 provides that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." To satisfy this requirement, the plaintiff must not have interests antagonistic to those of the shareholders as a whole. *See Lewis v. Curtis,* 671 F.2d 779, 788 (3rd Cir.) *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); *see also Baron v. Strawbridge & Clothier,* 646 F.Supp. 690 (E.D.Pa.1986). In assessing the adequacy of representation, courts will consider any indications that suggest the existence of extrinsic factors which "render it likely that the representative may disregard the interests of the class members." *Davis v. Comed, Inc.,* 619 F.2d 588 (6th Cir.1980) citing, *Roussel v. Tidelands Capital Corp.,* 438 F.Supp. 684, 688 (N.D.Ala.1977).[3]

The burden is on the defendant to establish that the plaintiff is not an adequate representative of the shareholders. *Shamrock Associates v. Horizon Corp.,* 632 F.Supp. 566 (S.D.N.Y.1986). Here, other than a few conclusory statements regarding the inadequacy of plaintiff as representative of the DWG shareholders, defendant has failed to explain why the interests of Granada and the other shareholders are necessarily divergent. Consequently, this Court finds that plaintiff qualifies as a fair and adequate representative of the other shareholders of DWG.

Although derivative plaintiff brings this suit primarily to force the consideration by DWG of a merger proposal, Granada's interests do not appear to be economically antagonistic to the interests of the other shareholders. While Granada is a potential buyer and the other shareholders are potential sellers, their interests are not inevitably in conflict. Both Granada and the other shareholders share an interest in preventing DWG's directors from locking up control of DWG. Moreover, in its proposal, Granada has offered to purchase DWG stock at a price of $22.00 per share, a price significantly higher than the stock's current listing on the exchange.[4] Conceivably, this offering price does not reflect the true value of the DWG stock; yet, by bringing this suit, Granada hopes to create an opportunity for the shareholders to make that determination. By either rejecting or accepting Granada's price (or a price offered by another bidder), the shareholders, rather than the Court, ultimately decide whether plaintiff's interests are antagonistic to their own. Should there be a divergence of economic interests, DWG shareholders will be free to reject any offers that might come before them.

A second factor that requires attention in this case is the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself. Clearly, Granada shares with the other shareholders the common interest of seeking redress from defendants for any breaches of fiduciary duty or violations of federal securities laws. Yet, Granada, as a suitor of the corporation, has substantial personal interests in the derivative action beyond those of the other shareholders. A plaintiff, however, is not disqualified from bringing an action under Rule 23.1 merely because it has interests that extend beyond those of the entire class of shareholders, provided the plaintiff shares a common in-

---

**3.** In *Davis,* this circuit set forth several factors that are frequently used by the courts to determine whether a plaintiff qualifies as a fair and adequate representative of his fellow shareholders:

> ... economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation, other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal inter-

ests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

A strong showing of one factor, demonstrating that plaintiff's interests are inimical to those he purports to represent fairly and adequately, will suffice in reaching such a conclusion. 619 F.2d at 593–94.

**4.** On June 30, 1989, the closing price on the American Stock Exchange was 12¼.

terest in the matter of the suit. *See Tyco Laboratories, Inc. v. Kimball,* 444 F.Supp. 292, 298–99 (E.D.Pa.1977). On the basis of plaintiff's complaint this Court believes that there is sufficient community of interests, as well as an absence of potential conflict of interests, to ensure that plaintiff will serve adequately as a representative of DWG shareholders.

*Sufficiency of Process*

Finally, defendants seek the dismissal of the individual defendant-directors on the grounds that plaintiff failed to comply with the federal rules governing the service of the summons and the complaint. Defendant asserts that plaintiff "only express-mailed copies of the pleadings addressed to the individual defendants at DWG's place of business in Florida." Plaintiff's attempts at service, defendants argue, are "totally insufficient" under Fed.R.Civ.P. 4.

In considering this motion, this Court has encountered difficulty distilling the crux of defendants' argument. Unfortunately, defendants' motion is vague, ambiguous, and incomplete. Rather than resorting to clairvoyance, however, this Court will consider each of the various possible challenges that could be inferred from the language of the motion.

■ By their motion, defendant-directors appear to be challenging the method of service of the complaint and summons. This Court finds no flaw in the manner in which the individual directors were served in this action. Defendants' argument seems to stem from plaintiff's use of the mail to effectuate service to defendant-directors not residing in the State of Ohio. Plaintiff, in accordance with Fed.R.Civ.P. 4(e), borrowed the Ohio rule providing for out-of-state service. Ohio R.Civ.P. 4.3(B)(1). Under Rule 4.3(B)(1), service of process may be accomplished outside of Ohio via certified mail. As evidenced by copies of the summonses and the signed returned receipts, plaintiff properly served each of the defendant-directors.[5]

■ Defendants' reference to "express-mailed copies of the pleadings" adds confusion to the motion and prompts an alternative reading. Defendants, perhaps, intended to attack the sufficiency of service of plaintiff's Amended Verified Complaint, pursuant to Fed.R.Civ.P. 5, in addition to or in lieu of their attack on sufficiency of service of the summonses and complaint. This challenge must fail as well. Rule 5, which governs the service and filings of pleadings filed subsequent to the original complaint, expressly provides that service upon a party may be made by mail. Fed.R. Civ.P. 5(b); *see also* Ohio R.Civ.P. 5(B).

■ Finally, defendants' motion might be construed as a challenge of plaintiff's choice of address used in the mailing of the summonses and complaint to defendant-directors. Rather than send certified mail service to defendant-directors at their individual residences, plaintiff chose to make service of process on defendant-directors at DWG's offices in Miami, Florida.

In instances where service is made under the rule of court of a state, pursuant to Fed.R.Civ.P. 4(e), the summons shall correspond as nearly as may be to that required by the rule. Fed.R.Civ.P. 4(b). Under Ohio law, service of process is considered constitutionally sound if it is "reasonably calculated" to inform interested parties of the pendency of the action. *Akron–Canton Regional Airport Authority v. Swinehart,* 62 Ohio St.2d 403, 406 N.E.2d 811 (1980). Service, therefore, need not be attempted through the most likely means of success such as service to a residence. *Id.* at 406, 406 N.E.2d at 814. Accordingly, certified mail service sent to a business can comport with due process if the "circumstances are such that successful notification could be reasonably anticipated." *Id.*

In the case at hand, service was made in a manner "reasonably calculated" to reach the defendant-directors. As plaintiff notes, defendant-directors do receive mail sent to them at the DWG offices in Florida as evidenced by their counsel's March 28, 1989

---

5. Defendants state in their motion that plaintiff sent "copies of the pleadings" by express mail. While plaintiff sent copies of the amended complaint by express mail, plaintiff sent individual summonses and copies of the original complaint by certified mail.

response to the letters of March 14 and 24 sent by Granada to them at the corporate address.

After careful consideration, defendants' Motion to Dismiss is hereby denied.

IT IS SO ORDERED.